506 So.2d 437 (1987)
STATE of Florida: Bob Graham, As Governor of the State of Florida; Jim Smith, As Attorney General of the State of Florida; Doyle Connor, As the Commissioner of Agriculture of the State of Florida; George Firestone, As Secretary of State of the State of Florida; Gerald A. Lewis, As Comptroller of the State of Florida; Bill Gunter, As Treasurer of the State of Florida; Ralph D. Turlington, As Commissioner of Education of the State of Florida; Elton J. Gissendanner, As Executive Director of the Florida Department of Natural Resources; and T. Edward Austin, As State Attorney of the Fourth Judicial Circuit of Florida, Appellants,
v.
Lester L. HODGES, Jr., Individually; and Larry B. Gilmore, Sr., Individually and As President of the St. Johns River Chapter of Organized Fisherman of Florida, Inc., and Louis O. Thomas, Appellees.
No. BM-326.
District Court of Appeal of Florida, First District.
March 27, 1987.
Rehearing Denied May 27, 1987.
*438 Jim Smith, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellants.
Jefferson W. Morrow and Raymond A. David, Jr., Jacksonville, for appellees.
JOANOS, Judge.
This is an appeal from a final order in which the trial court held that one of the provisions of the state's regulatory scheme governing the Florida East Coast Shrimp Bed is unconstitutional in its application to Nassau County. The state seeks our review of the trial court's order with respect to the constitutionality of section 370.153(4)(b), Florida Statutes (1983). Appellees, who are licensed shrimp producers, have challenged the overall constitutionality of section 370.153, Florida Statutes (1983), alleging the statute is an invalid exercise of the state's police powers. We affirm in part, and reverse in part.
On November 1, 1983, appellees Hodges and Gilmore filed an amended complaint, alleging that (1) amended section 370.153, Florida Statutes, is unconstitutionally vague because it provides no guidelines for the determination of "shoreline;" (2) the statute unlawfully delegates legislative authority to the Florida Department of Natural Resources (DNR); and (3) the statute bears no rational relationship to any valid state interest, and is therefore an arbitrary and capricious exercise of governmental power. Appellees sought preliminary and permanent injunctions enjoining enforcement of section 370.153(3)(f), (4)(b), and (8)(b), and a declaration that these provisions are unconstitutional. Subsequently, the action filed by appellees Hodges and Gilmore was consolidated with a later but similar action filed by appellee Thomas. The case was tried without a jury on November 7 and 8, 1985.
On February 5, 1986, the trial court entered a final judgment, rejecting the challenge to the validity of the chapter 370 statutory provisions. Although in this order the trial court expressed some concern regarding the failure of the statute to define "shoreline," the court found that "shoreline," within the context of the statute, means water's edge, and determined there was a valid purpose for the closing of a portion of the St. Johns River for purposes of shrimp production.
On February 12, 1986, appellees filed a motion for rehearing on the issue of the constitutionality of the statute and the state's enforcement of the "100 yards from shoreline" provisions of section 370.153(3)(f), (4)(b), and (8)(b).
On March 18, 1986, the trial court entered an order modifying the final judgment. As modified, the final judgment held the provisions of section 370.153(3)(f), (4)(b), and (8)(b) are unconstitutionally vague and unenforceable as applied within *439 Nassau County, and that to the extent that section 370.153(4)(b) could be construed or applied to prohibit dead shrimp production in Nassau County, it was unconstitutionally vague.
The portion of the modified order pertinent to this appeal is the finding that section 370.153(4)(b) is unconstitutionally vague due to (1) the impossibility of ascertaining a measuring point for compliance with the "100 yards from shoreline" restriction; (2) the inconsistency with section 370.153(4)(a), finding this subsection specifically authorizes dead shrimp production in Nassau County waterways; and (3) the inconsistency with section 370.153(3)(f) which in terms applies only to Clay, Duval, and St. Johns counties. The portions of section 370.153 relevant to this subject are:
s. 370.153(2) SHRIMPING PROHIBITED.  It is unlawful to employ the use of any trawl or other net, except a common cast net, designed for or capable of taking shrimp, within the inland waters of Nassau, Duval, St. Johns, Putnam, Flagler, or Clay Counties, except as hereinafter provided.
s. 370.153(3)(f) All commercial trawling in Clay, Duval, and St. Johns Counties shall be restricted to the inland waters of the St. Johns River proper in the area north of the Acosta Bridge in Jacksonville and at least 100 yards from the nearest shoreline.
s. 370.153(4) DEAD SHRIMP PRODUCTION.  Any person may operate as a commercial dead shrimp producer on the St. Johns River provided that:
(a) A dead shrimp production permit is procured from the Department of Natural Resources upon the receipt by the department of a properly filled out and approved application by a person intending to use a boat, not to exceed 35 feet in length in Duval, St. Johns, Putnam, and Clay Counties, and not to exceed 45 feet in length in Nassau County, for dead shrimp production within the inland waters of Nassau County and the inland waters of the St. Johns River of Duval, Putnam, St. Johns, Flagler, or Clay Counties, which permit shall cost $250 and shall be required for each vessel used for dead shrimp production. The design of the application and permit shall be determined by the Department of Natural Resources. The proceeds of the fees imposed by this paragraph shall be deposited into the account of the Motorboat Revolving Trust Fund to be used by the Department of Natural Resources for the purpose of enforcement of marine resource laws.
(b) All commercial trawling shall be restricted to the St. Johns River proper in the area north of the Acosta Bridge in Jacksonville and at least 100 yards from the nearest shoreline.
The starting point of any analysis directed to the constitutionality of a legislative act is the principle that "legislative acts are presumed to be constitutional and ... courts should resolve every doubt in favor of constitutionality." Bunnell v. State, 453 So.2d 808 (Fla. 1984). This presumption of validity applies unless the legislative enactments are clearly erroneous, arbitrary, or wholly unwarranted. State v. State Board of Education of Florida, 467 So.2d 294 (Fla. 1985). All doubts as to validity must be resolved in favor of constitutionality, Falco v. State, 407 So.2d 203 (Fla. 1981); and if a constitutional interpretation is available, the courts must adopt that construction. Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, Southeast Volusia Hospital District v. Florida Patient's Compensation Fund, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984). Furthermore, since public purpose determinations are reserved to the legislature, a party challenging such a determination must demonstrate that the law as enacted was beyond the power of the legislature. State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982). See also Fulford v. Graham, 418 So.2d 1204 (Fla. 1st DCA 1982).
In addition to the deference accorded the legislature in terms of determinations of public purpose, the intent of the legislature must be the major focus of statutory construction. Legislative intent is to be *440 gleaned primarily from the language of the statute. Department of Legal Affairs v. Sanford-Orlando Kennel Club, 434 So.2d 879 (Fla. 1983); St Petersburg Bank & Trust Company v. Hamm, 414 So.2d 1071 (Fla. 1982). An interpretation which leads to a result not intended by the legislature will not be adopted. Drury v. Harding, 461 So.2d 104 (Fla. 1984).
Where, as in the instant case, the interpretation problem arises because of inconsistent provisions within the statute or with a prior unrepealed portion of the statute, the fundamental rule of statutory construction is that "the last expression of the legislative will prevails." Askew v. Schuster, 331 So.2d 297, 300 (Fla. 1976). Albury v. City of Jacksonville, 295 So.2d 297 (Fla. 1974); State v. City of Boca Raton, 172 So.2d 230 (Fla. 1965); 1A Sutherland Statutory Construction s. 22.22 (4th Ed. 1985). And, although repeal by implication is not favored, it will be upheld when irreconcilable conflict exists and the later statute shows legislative intent to repeal. Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla. 1977).
More particularly, the test to determine if a statutory provision is so vague as to be considered unconstitutional "is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." State v. Hagan, 387 So.2d 943 (Fla. 1980). In State v. Hagan, as in the instant case, the trial court based its finding of vagueness in part on the legislature's failure to define the terms within the statute. In rejecting the trial court's finding, the supreme court said:
The legislature's failure to define a statutory term does not in and of itself render a penal provision unconstitutionally vague. In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense. See Tingley v. Brown, 380 So.2d 1289 (Fla. 1980); Milazzo v. State, 377 So.2d 1161 (Fla. 1979); ...
387 So.2d at 945.
Subsequently, the supreme court applied the Hagan rationale in Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). In Southeastern Fisheries, the trial court found the term "illegal fish trap" unconstitutional because impermissibly vague. The district court reversed, and the supreme court agreed with the district court, saying:
In determining whether a statute is vague, common understanding and reason must be used. Where a statute does not specifically define words of common usage, such words must be given their plain and ordinary meaning. Hagan. Further, courts cannot require the legislature to draft laws with such specificity that the intent and purpose of the law may be easily avoided. Courts must determine whether or not the party to whom the law applies has fair notice of what is prohibited and whether the law can be applied uniformly.
453 So.2d at 1353-1354.
In the original final judgment in this case, the trial court rejected appellees' argument that the term "shoreline" as used in section 370.153 is unconstitutionally vague, relying in part on the "common understanding" rationale of Southeastern Fisheries. The trial court reasoned that "as used in the statute, shoreline means water's edge," finding that a fixed boundary was not necessary because of the nature of the conduct regulated. Since infant shrimp live at the water's edge and larger shrimp which are sought by shrimpers are found in deeper waters, the trial court concluded that for purposes of regulation, a fixed boundary does not have to be defined.
Following a proceeding on appellees' motion for rehearing, the trial court receded from its initial disposition, holding instead that enforcement of the "100 yards from shoreline" restriction, as applied within Nassau County, is unconstitutionally vague and unenforceable. The term "shoreline" is defined in The American Heritage Dictionary *441 as "the line marking the edge of a body of water." There is nothing in the record which would indicate that the term "shoreline" as it relates to shrimping has a meaning not susceptible of a common understanding, or that the term takes on a different meaning in Nassau County than its meaning in other areas of the state.
The second ground cited by the trial court for a finding of unconstitutional vagueness as the statute relates to Nassau County, is a reference to boat length in 370.153(4)(a). Apparently, the trial court was persuaded that the 45-foot boat length reference for Nassau County, which was retained in the amended statute "specifically authorizes licensees to engage in production of dead shrimp in Nassau County waterways ..." Although in their brief, appellees do not expressly reference a 1984 opinion prepared by the Attorney General's office, the findings set forth in the modified order indicate the trial court was persuaded by the reasoning set forth in that opinion. 1984 Op. Att'y Gen. Fla. 84-4 (Jan. 19, 1984).
The Attorney General's opinion emphasizes retention in the amended language referring to the 45-foot boat length in Nassau County, as evidence of legislative intent to include Nassau County as an area of lawful dead shrimp production. However, the opinion fails to address the language of the 1977 amendment which inserted the clause: "Any person may operate as a commercial dead shrimp producer on the St. Johns River provided that: ..." (emphasis supplied). Our examination of the legislative history of section 370.153, leads us to conclude the amended statute was a response to evidence that the Florida East Coast shrimp supply was threatened by various environmental factors. In addition, an unchallenged finding of the trial court's original final judgment established that the St. Johns River is the area which nurtures the early stages of development of newly spawned shrimp. Accordingly, due to the express language of the amended statute taken together with the principle that the last expression of the legislative will prevails, we conclude a reasonable construction of subsection (4)(b) read in conjunction with subsection (2) is that it is unlawful to operate as a dead shrimp producer anywhere in the 6-county area which comprises the Florida East Coast Shrimp Bed except in "the St. Johns River proper north of the Acosta Bridge in Jacksonville and at least 100 yards from the nearest shoreline." Section 370.153(4)(b), Fla. Stat. (1983). Furthermore, we find this construction gives effect to legislative intent, and upholds the validity and constitutionality of the statute as a whole.
We find further support for the construction which we here adopt by application of the maxim inclusio unius est exclusio alterius. This principle, taken together with the rules of construction which hold that (1) the last expression of the legislative will prevails, and (2) a subsequent statutory provision will repeal by implication a prior inconsistent statute, indicates a legislative intent to restrict dead shrimp production to the St. Johns River proper. The phrase so limiting dead shrimp production was added to Section 370.153 in 1977, and at the same time subsection (4)(b) was substantially changed to restrict all commercial trawling "to the St. Johns River proper in the area north of the Buckman Bridge." Ch. 77-186, § 1, Laws of Fla. The 1983 amendment to subsection (4)(b) further restricted commercial trawling to the area "north of the Acosta Bridge at Jacksonville." Ch. 83-295, § 1, Laws of Fla.
Therefore, we conclude that section 370.153(4)(b) is not unconstitutionally vague. In express terms, the statute restricts dead shrimp production to "the St. Johns River proper in the area north of the Acosta Bridge in Jacksonville." Since our determination of this point precludes dead shrimp production in Nassau County, we find it unnecessary to address the sub issue of the "100 yards from shoreline" restriction with respect to Nassau County waterways.
As to the issue raised on cross appeal, we reject appellees' assertion that section 370.153 is an invalid exercise of the state's police power. It is well settled that the state has the power to regulate all manner of fishing within the waters of the *442 state. State v. Casal, 410 So.2d 152, 154 (Fla. 1982), cert. dismissed, Florida v. Casal, 462 U.S. 637, 103 S.Ct. 3100, 77 L.Ed.2d 277 (1983); State v. Hill, 372 So.2d 84 (Fla. 1979). In Hill v. State, 238 So.2d 608, 610-611 (Fla. 1970), the court said:
This Court established long ago that protection and regulation of shrimping and fishing within the state's waters is a valid exercise of a sovereign's police powers... . The Legislature has recognized that the supply of shrimp should be conserved and that the shrimp industry is valuable to the economy of Florida and needs protection. Shrimping is a gainful activity which may be subjected to certain reasonable limitations and conditions without violating any constitutional rights of those subject to the regulations.
It is equally well settled that in the exercise of its police power, the guarantee of due process under the federal and state constitutions "requires that the means selected shall have a reasonable and substantial relation to the object sought to be attained and shall not be unreasonable, arbitrary, or capricious." State v. Saiez, 489 So.2d 1125, 1128 (Fla. 1986), citing Nebbia v. People of State of New York, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); Lasky v. State Farm Insurance Co., 296 So.2d 9, 15 (Fla. 1974); L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121, 129 (1931).
In this case, the trial court's final judgment references the expert testimony heard over the two days of the proceedings. This testimony persuaded the trial court that the shoreline habitat of infant shrimp must be protected. Further, the trial court expressly found that closing the St. Johns River below the Acosta Bridge served the valid purpose of reserving wide expanses of shallow water which provide an excellent area for the development of young shrimp.
Since there is no transcript, this court is unable to review the trial court's judgment with regard to the factual underpinning of its conclusion that section 370.153 has a valid purpose, and that the means employed are reasonable. From our examination of the statute and the record, we agree with the trial court's conclusion that the statute is a valid exercise of the state's power to regulate the shrimping industry. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979).
Accordingly, the modified final judgment is reversed insofar as it held section 370.153(4)(b) is unconstitutional in application to Nassau County. In all other respects, the final judgment is affirmed.
SMITH and BARFIELD, JJ., concur.