JOANOS, Judge.
Satellite Television Engineering, Inc. (Satellite) appeals a final order of the Department of General Services (DGS), authorizing the Department of Education (DOE) to negotiate a contract with Microdyne Corporation (Microdyne) for the purchase of a satellite television network. Satellite presents two issues for our review: (1) whether the award of the contract to Mi-crodyne is valid, and (2) whether DGS has statutory authority to authorize DOE to award the contract to Microdyne. We affirm.
On February 14, 1986, DOE issued Invitation to Bid No. 86-54, to provide services for a statewide satellite telecommunications network. The bid invitation was sent to 108 vendors, which included every vendor on the list provided by DGS, plus additional vendors identified through DOE’s own efforts. Satellite and Microdyne were on the list of vendors receiving bid invitations.
After issuing the invitation, DOE modified the original bid specifications, relaxing some of the requirements in order to increase the number of vendors capable of providing the equipment. On March 5, 1986, DOE issued an addendum to the bid invitation. A second addendum was issued on March 17,1986. Six companies responded to the second addendum. DOE disqualified one of the bids on technical grounds, rejected four of the bids — including that of Satellite — as non-responsive, and announced its intention to award the bid to Microdyne, the sole responsive bidder.
*441 Satellite filed a formal protest to the award of the bid to Microdyne. After a hearing, the hearing officer entered his recommended order, finding that DOE had acted in compliance with the applicable rules and statutes in rejecting Satellite’s bid, and further finding that Satellite’s protest should be dismissed because its bid did not meet bid specifications. On August 14, 1986, the Commissioner of Education entered a final order adopting the hearing officer’s recommended order.
Thereafter, the Commissioner of Education requested permission from DGS, Division of Purchasing (Division) to enter into a contract with Microdyne. On September 8, 1986, DGS gave notice of its intent to authorize DOE to enter into the contract. Satellite filed a formal protest, pursuant to section 120.53(5), Florida Statutes. At a conference held October 2, 1986, efforts to resolve the protest proved unsuccessful. Since it was determined that there were no disputed issues of material fact, DGS assigned the case to Mr. Raymond K. Petty, an attorney in the DGS Division of Bond Finance.
On October 28,1986, an informal hearing was held before Mr. Petty. A Division purchasing specialist testified that after reviewing DOE’s bid process, he recommended authorizing DOE to negotiate with Microdyne, the only responsive bidder. The purchasing specialist found that (1) DOE had complied with all rules and regulations governing the bid process, (2) a hearing had taken place and a recommendation had been made, (3) there was a possibility that the funds would be lost if there were further delays, (4) there was no guarantee that rebidding would serve any useful purpose in that past Division experience had demonstrated that second bids were seldom fruitful, and (5) based on past experience and the documentation submitted, the Division concluded that authorizing DOE to negotiate with Microdyne was in the state’s best interest. DGS acknowledged there was no existing emergency requiring purchase of the equipment from Microdyne, and that Microdyne is not the only available source for the equipment required by DOE for its telecommunications network.
On November 13, 1986, the hearing officer entered a corrected recommended order recommending that DGS enter a final order authorizing DOE to negotiate a contract with Microdyne for the satellite television network. On December 2,1986, the Governor and Cabinet approved the final order which adopted the findings of fact, conclusions of law and the recommendation of the hearing officer’s corrected recommended order.
On December 30, 1986, Satellite filed its notice of appeal. On January 7,1987, DOE entered into a contract with Microdyne. On January 13, 1987, Satellite filed a motion for stay pending review of the final order. DGS denied the motion for stay on February 17, 1987.
Briefly stated, the parties have advanced the following positions: (1) Satellite contends that receipt of one valid bid equates to “no competitive bids,” which, absent the existence of any of the section 287.-062(l)(a)-(e) exceptions, requires the Division to institute a second round of bidding; (2) DGS agrees that receipt of one valid bid equates to “no competitive bids,” but contends that under the statute, DGS has discretion to authorize the agency to negotiate a contract with the one valid bidder, or to require a second bidding, after the agency’s certification of the conditions and circumstances, and (3) DOE contends that receipt of one valid bid, together with nonre-sponsive bids, constitutes competitive bidding within the meaning of the statute, and permits award of the contract to the responsive bidder without further ado.
Resolution of this case turns upon the construction to be accorded section 287.-062(1) and (2), Florida Statutes (Supp.1986). It is well settled that the goal or purpose of statutory construction is to ascertain, so as to give effect to, legislative intent. City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla.1983); State v. Webb, 398 So.2d 820, 824 (Fla.1981); State v. Hodges, 506 So.2d 437, 439 (Fla. 1st DCA 1987). That intent is to be gleaned primarily from the language of the statute. Department of *442 Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla.1983); Thayer v. State, 335 So.2d 815, 816 (Fla.1976); State v. Hodges, supra.
In addition, it is generally recognized that an agency’s interpretation of a statute which it is charged to administer is entitled to great weight. “However, this deference is not without limit.” Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249, 250 (Fla.1987); Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716 (Fla. 1983); Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984). A corollary to this principle is the rule that an agency is accorded a wide discretion in soliciting and accepting bids for public purposes, and when that discretion has been fairly and honestly exercised, it will not be set aside. Liberty County v. Baxter’s Asphalt and Concrete, Inc., 421 So.2d 505 (Fla.1982); Capeletti Bros., Inc. v. State Department of General Services, 432 So.2d 1359 (Fla. 1st DCA 1983).
Application of the foregoing principles to the instant case demonstrates first, that the stated legislative intent with respect to the Chapter 287 procurement of commodities and services for the state, is to further “fair and open competition,” so as to “establish public confidence in the process by which contractual services are procured.” § 287.001, Fla.Stat. (1985).[1] See also Liberty County v. Baxter’s Asphalt, 421 So. 2d at 505, in which the court, quoting Wester v. Belote, 103 Fla. 976, 138 So. 721, 724 (1931), said—
public bids statutes “serve the object of protecting the public against collusive contracts and prevent favoritism ... by public officials and tend to secure fair competition upon equal terms to all bidders, [and] they remove temptation on the part of public officers to seek private gain at the taxpayers’ expense, are of highly remedial character, and should receive a construction always which will effectuate their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded, or defeated.”
The provisions concerning competitive bid requirements and procedures which are at issue in the instant case are set forth in section 287.062, Florida Statutes (Supp. 1986), which states in pertinent part:
(1) No purchase of commodities may be made when the purchase price thereof is in excess of the threshold amount provided in s. 287.027 for CATEGORY TWO unless made upon competitive bids received, except:
(a) If the head of any state agency maintains that an emergency exists in regard to the purchase of any commodity, so that the delay incident to giving opportunity for competitive bidding would be detrimental to the interests of the state, then the head of such agency shall file with the division a statement under oath certifying the conditions and circumstances. In the case of the emergency purchase of insurance, the period of coverage of such insurance shall not exceed a period of 30 days; and all such emergency purchases shall be reported to the head of the Department of General Services.
(b) Purchasing agreements, contracts, and maximum price regulations executed by the division are excepted from bid requirements.
(c) Commodities available only from a single source may be excepted from the bid requirements upon the filing by the *443 head of an agency of a certification of conditions and circumstances with the division if, subsequent thereto, the division authorizes the exception in writing.
(d) When it is in the best interest of the state, the head of the Department of General Services may authorize the division director to purchase insurance by negotiation, but this shall be done only under conditions most favorable to the public interest and upon a showing that such purchase will result in the lowest ultimate cost for the coverage obtained.
(e) When an agency determines in writing that the solicitation for competitive bids is not practicable or not advantageous to the state, commodities may be procured by requests for proposals. For commodities in excess of the threshold amount provided in s. 287.017 for CATEGORY FOUR, the determination shall be submitted to the division. To assure full understanding of and responsiveness to the requirements set forth in the request for proposals, discussions may be conducted with qualified offerors. The division shall assist in the discussion upon request from the agency. Qualified of-ferors shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals prior to the submittal date specified in the request for proposals. The award shall be made to the responsive offeror whose proposal is determined to be the most advantageous to the state, taking into consideration price and the other evaluation criteria set forth in the request for proposals. The basis on which the award is made for commodities in excess of the threshold amount provided in s. 287.017 for CATEGORY FOUR shall be submitted in writing to the division.
(2) If no competitive bids or proposals for commodity purchases are received, the division may negotiate on the best terms and conditions.
Although Chapter 287 does not expressly define the term “competitive bids,” its intended meaning may be inferred by reference to the term “responsive bidder.” Section 287.012(12), Florida Statutes (1985) states:
“Responsive bidder” or “responsive of-feror” means a person who has submitted a bid which conforms in all material respects to the invitation to bid or request for proposals.
By analogy, then, a competitive bid is “a bid which conforms in all material respects to the invitation to bid.” DGS, acting pursuant to its rule-making authority, has defined the term “competitive bids” thusly:
Competitive bids shall mean two or more valid responses to an invitation to bid/proposal, (emphasis supplied).
Fla.Admin.Code Rule 13A-1.001(12). We disagree with that interpretation of the statutes. We believe that it superimposes a meaning upon the statute not intended by the legislature.
Florida Administrative Code Rule 13A-1.002(3)[2] sets forth the procedure to be followed when no competitive bids are received for a commodity. However, no express provision has been included in the current statute or concomitant rules for the situation presented by the instant case, that is, where one valid bid has been received. Nevertheless, we conclude that the term “competitive bids,” as it is used in section 287.062(1), was intended to encompass those situations where an agency has received one responsive bid together with one or more nonresponsive bids. In other words, if there have been two or more bids, only one of which “conforms in all material *444 respects to the invitation to bid, the competitive bidding requirement has been met and the Division may authorize the agency involved to award the contract without instituting a second round of bidding.
We find this interpretation gives full effect to legislative intent to further fair and open competition so as to instill public confidence in the state purchasing process. Furthermore, we find this interpretation comports with logic and reason, in that (1) it precludes a second round of bidding which would act to the disadvantage of a sole responsive bidder, and (2) it precludes further delay in the award of the contract by eliminating an unnecessary procedural step. We agree, therefore, with the construction of the term “competitive bids” which has been advanced by DOE.
Accordingly, we find that the term “competitive bids” means receipt of two or more bids, provided at least one bid “conforms in all material respects to the invitation to bid,” and disapprove the DGS interpretation insofar as it conflicts with this construction. By this ruling, we hold that the Department of General Services acted within its statutory authority in permitting DOE to award the contract to Microdyne, and further hold that the award of the contract to Microdyne is valid. Therefore, the order rendered by the Department of General Services is affirmed.
SMITH, C.J., and WENTWORTH, J., concur.

. § 287.001, Fla.Stat. (1985), provides:
Legislative intent. — The Legislature recognizes that fair and open competition is a basic tenet of public procurement that such competition reduces the appearance and opportunity for favoritism and inspires public confidence that contracts are awarded equitably and economically, and that documentation of the acts taken and effective monitoring mechanisms are important means of curbing any improprieties and establishing public confidence in the process by which contractual services are procured. It is essential to the effective and ethical procurement of contractual services that there be a system of uniform procedures to be utilized by state agencies in managing and procuring contractual services; that detailed justification of agency decisions in the procurement of contractual services be maintained; and that adherence by the agency and the consultant to specific ethical considerations be required.

. Fla.Admin.Code Rule 13A-1.001(3), provides in pertinent part:
(3) Receipt of No Competitive Bids Proposals, in the First Invitation to Bid Request for Proposal on Commodities Exceeding Threshold amount for Category Two — When no competitive bids proposals are received for the purchase of a commodity or group of commodities exceeding the threshold amount for Category Two in the bid/proposal solicitation, the agency shall review the situation in order to determine the reasons if any, why no competitive bids/proposals were received before issuing a second invitation to bid/request for proposals; provided, however, if the agency determines that commodities are available only from a single source, or that conditions and circumstances warrant negotiation on the best terms and conditions, then the agency head may make a certification, in writing, as to the conditions and circumstances to the Division of Purchasing.