C. C. OLSON, sole-trader, doing business under the name and style of Grand Forks Sheet Metal Works, Plaintiff and Appellant,

v.

Mary A. BEACHAM and Clare McElroy, Defendants and Respondents.

No. 7771.

Supreme Court of North Dakota.

April 7, 1960.

Lyche & Lyche, Grand Forks, for appellant.

Degnan, Hager, McElroy & Lamb, Grand Forks, for respondents.

SATHRE, Chief Justice.

The plaintiff and appellant in this action is a contractor doing business under the name and style of Grand Forks Sheet Metal Works. The defendants are the owners of a certain building and real estate in the City of Grand Forks, North Dakota known as the J. C. Penney Store.

On or about the month of June 1956 the defendants advertised for bids for the construction of a ventilating and evaporative cooling system in an addition to their building known as the Penney Store.

The advertisement contained the following provisions:

"Rejection of bids: The owner reserves the right to reject any or all bids when such rejection is in the interest of the owner, and the right to waive any informality in bids received when such waiver is in interest of the owner."

In the instruction to bidders it is provided that bids shall be accompanied by a bid guaranty of not less than five percent of the amount of the bid, which shall be a bid bond of a surety company duly authorized to do business in the State of North Dakota or a certified check made payable to the owner. It is also provided that the bid bond shall guarantee that the bidder will, if his bid is accepted, enter into a formal contract with the owner and that the required bond will be given.

In response to the advertisement for bids the plaintiff submitted his bid, the pertinent parts of which are as follows:

"The undersigned, as bidder, hereby proposes, and if this proposal is accepted, agrees to enter into a contract to furnish material, labor, skill, tools, and equipment for the ventilating and evaporative cooling in the construction of an addition to your building at 28–32 South Third Street, Grand Forks, North Dakota, in accordance with plans and specifications No. 5607 and all addenda issued prior to June 19, 1956, prepared by Grosz and Anderson, Architects, Grand Forks, North Dakota for the following sum.

"Base Bid: Twenty Five Thousand Five Hundred Fifty Dollars ($25,550. 00);"

Accompanying this proposal the undersigned attached hereto a bid guarantee in the form of a Bid Bond in the amount of 5% of the Bid.

"If written notice of the acceptance of this Bid is given to the undersigned

within 30 days after the date of opening of the bids, the undersigned will, within (10) days after the date of mailing of such notice, execute and deliver the contract and give Bond in accordance with the specifications and bid as accepted."

The defendants rejected the bid of the plaintiff and accepted the bid of another contractor in the sum of $25,870. The plaintiff thereupon brought this action against the defendants, claiming damages as a result of alleged breach of contract by the defendants in failing to accept plaintiff's bid which was the lowest bid.

The case was tried to the court without a jury. The trial court found for the defendants and judgment was entered accordingly. The case is here on appeal and trial de novo is demanded.

■■■ It is the contention of the plaintiff that having submitted the lowest bid and having furnished the required bid bond a contract resulted between the parties, and that failure on the part of the defendants to accept plaintiff's bid constituted a breach of contract resulting in damages to the plaintiff. The plaintiff alleges in his complaint that it was understood between the parties that a formal contract should be entered into embodying the respective agreements of the parties.

There is no evidence in the record of such understanding. The case was tried upon a stipulation between the parties that a mimeograph copy of specification No. 5607 for an addition to the J. C. Penney Store in Grand Forks, North Dakota, prepared by the architects, was to be marked and received as plaintiff's exhibit 1; that the original bid of the plaintiff was to be marked and received as plaintiff's exhibit 2; and that the original bid of Art Greenberg Sheet Metal Works, whose bid was accepted by defendants was to be marked and received as plaintiff's exhibit 3. It was further stipulated that the contract for construction of the ventilating and evaporative cooling system proposed in exhibit 1, was given to Art Greenberg Sheet Metal Works for its bid of $25,870.

It was also stipulated and agreed that in the event the judgment would finally be in favor of the plaintiff the question of damages should be submitted as question of fact to a jury.

As pointed out herein, the defendants in advertising for bids stated in their specifications prepared by their architects that:

"The owner reserves the right to reject any or all bids when such rejection is in the interest of the owner, and the right to waive any informality in bids received when such waiver is in interest of the owner."

The plaintiff in his bid stipulated:

"The undersigned, as bidder, hereby proposes, and if this proposal is accepted, agrees to enter into a contract, to furnish material, labor, skill, tools, and equipment for the ventilating and evaporative cooling in the construction of an Addition to your building."

It appears clear therefore that the defendants in their advertisement for bids specifically reserved the right to reject any or all bids; and the plaintiff in submitting his bid stated specifically that *if his proposal was accepted* he would enter into a contract to furnish material, labor, skill, tools and equipment for construction of the ventilating and evaporative cooling system for the proposed addition to the store of the defendants.

The defendants did not accept the bid of the plaintiff but accepted the bid of another contractor, Art Greenberg Sheet Metal Works. They clearly had the right under the terms of their advertisement for bids and instruction to bidders to accept or reject any of the bids that might be submitted. The plaintiff recognized the right of the owners and stated in his bid that if it was accepted, he would enter into a contract to furnish material and labor for the

cooling system to be installed in the addition to plaintiff's store. Under the terms of the bid the plaintiff offered to enter into a contract *if the defendants accepted his bid*. The defendants having rejected the bid of the plaintiff were under no obligation to him and they had the right to determine for themselves which bid submitted would be to their best interest. The plaintiff was aware of this fact when he submitted his bid. The advertisement of the defendants for bids was merely an invitation for offers and was not an offer to accept any particular bid. The advertisement could result in a contract only upon acceptance of a bid submitted by a bidder. In 17 C.J.S. Contracts, § 48, page 390, it is stated:

"Where a person or a corporation advertises for or requests bidders for property to be sold or for the erection or construction of particular work, it is well settled that this is simply an invitation to make offers—to make tenders—as it is often called, and is not an offer obliging the one extending the invitation to accept the highest or lowest of any of the bids; and this rule applies although the call for bids reserves no right to reject any and all bids, unless it contains language subject to the interpretation that the intention is to let the contract to the highest or lowest bidder. The acceptance of the bid makes the contract in accordance with the terms of the proposals; but the parties may state the exact agreement as they please in a subsequently executed written document. If an owner accepts a particular tender or bid for building or construction work, the contract is consummated, and is binding on both the builder and the owners."

In the case of United States v. Farina, D.C., 153 F.Supp. 819, 821, a bid submitted in response to an advertisement for bids for furnishing labor and materials for a certain project was defined as follows:

"A 'bid' as employed in the present context connotes 'an offer to perform a contract for work and labor or supplying materials at a specified price.' Being essentially an offer, a bid creates no rights in either the offeror (bidder) or the offeree until a contract comes into existence by acceptance. An offer gives rise to no rights to make a demand of either money or property nor is it, per se, a demand for either money or property; it is merely 'a calling upon another to enter into a contract', * * *."

In the case of Holliday v. Higbee, 10 Cir., 172 F.2d 316, 318, the United States Court of Appeals held to the same effect. We quote from the opinion:

"As pointed out, pursuant to the published invitation for sealed bids, he submitted Bid Number two * * * on which he predicated his cause of action. This bid was not a direct bid in any specified amount. Merely bidding $10 more than any other bid is not a bona fide valid bid. It was not a fair bid and the Government was not required to give it consideration, especially under a bidding invitation in which the right was reserved to accept or reject any or all bids."

In the instant case there was no meeting of the minds of the plaintiff and defendants. The defendants by their advertisement merely invited offers for the construction of certain specified improvements to their place of business. They reserved the right to reject any or all bids. The plaintiff submitted a bid, accompanied by a stipulation that he would enter into a contract if his bid was accepted. It was not accepted, and therefore no contract resulted and the defendants could not, upon the record before us, be held to be obligated to the plaintiff in any manner.

The judgment appealed from is in all things affirmed.

BURKE and MORRIS, JJ., concur.