STONE, Judge.
Dr. Sullivan sent the following allegedly libelous letter[1], regarding Dr. Barrett’s treatment of a patient, to the chief of surgery of the hospital employing both doctors:
This letter is to inform you of a recent problem arising over Dr. Barrett’s care of a patient. Dr. Barrett stopped me on Second Core at approximately 9:30 a.m. last Friday, October 28, in the presence of Dr. John Sweeney to discuss the care of Charles Bower, Room 421.
Dr. Barrett informed me that he was going out of town until November 2nd, that he was going to fly on a noon flight to Chicago to attend a medical meeting. He gave me a brief rundown as to what he had done and I reluctantly accepted the care of Mr. Bower, sight unseen. Subsequently it was noted on the order sheet that his original intention was to leave Mr. Bower in the care of Dr. Ag-garwal and I suspect he intended to keep him in 43 pounds of traction until he returned on November 2nd.
Dr. Barrett should have operated on this patient, if not on the 24th, certainly before the evening of the 25th. He should never have left the patient in 43 pounds of traction overnight and certainly should not have contemplated leaving the patient in 43 pounds of traction over a four day period prior to his return ...
Basically Dr. Barrett abandoned this patient and left me with a no-pay, high risk patient who required an operation.
I do not have to tell anybody with your experience that there was the possibility of quadriparesis or quadriplegia following an operation of this type, even in the best of hands. Needless to say, a complication of this magnitude would almost assuredly have involved the hospital, Dr. Barrett, myself and the anesthesia department in a malpractice suit.
In summary then, I would like to make the following points. Dr. Barrett’s treatment of Charles Bower fell below the standard of care for this type of injury in this community. Based on what I’ve seen of the treatment of Charles Bower I would question his competence to treat this type of injury. Dr. Barrett essentially abandoned this patient. He knew full well that he was leaving town on the 28th and left me with a high risk, no-pay patient who required surgery. I do not think this is an acceptable way for one professional to treat another.
I will not allow myself to be put in this type of jeopardy again. If anything of this type should happen I will refuse to take care of the patient and will leave it up to the administration of the hospital to decide where to go from there ...
At trial the defendant moved for a directed verdict, contending that the statements in the letter were protected as pure opinion under the First Amendment, and that he was therefore entitled to a directed verdict as a matter of law. See Hay v. Independent Newspapers, Inc., 450 So.2d 293 (Fla. 2d DCA 1984); From v. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla.1982). The plaintiff asserts that they are statements of mixed fact and opinion, requiring the issues to be determined by a jury. See Zambrano v. Devanesan, 484 So.2d 603 (Fla. 4th DCA), rev. denied, 494 So.2d 1150 (1986). Whether the writing in question is one of pure or mixed opinion is an issue of law. Zambrano; Hay; From.
The defendant argues that the facts in the letter are undisputed, and that his conclusions of abandonment and substandard care are opinions based on the stated facts. The plaintiff contends that there are some additional facts omitted and that the charges of abandonment and inadequate care constitute, at least in part, factual statements.
We conclude that the statements in the letter constitute pure opinion and are not actionable. The trial court thus erred in denying the motion for a directed verdict.
In determining whether the statement is one of pure or mixed opinion, the *984 court must examine the words used, together with the totality of the circumstances and the context, within which it was published. Zambrano; Hay; From. Various distinctions between pure and mixed opinion are more fully discussed in the above cited cases. Nothing is to be gained by repeating them here, except to note that in Zambrano we recognized that a finding of pure opinion will usually occur where the facts upon which the speaker relies are presented along with the commentary. Id. at 606. In Zambrano, the key factor, which is absent here, was that the slanderous statements included the implication that the speakers had personal knowledge of undisclosed facts to support their opinions. Here, as in From, the author is expressing a critical judgment. Here, the facts were substantially described and there was no implication in the letter that the opinions were based on other concealed or undisclosed facts.
We therefore reverse and remand so that the trial court may enter a judgment for the defendant in accordance with this opinion. The statements in the letter were pure opinion and entitled to First Amendment protection. See Zambrano; Hay; From. See also Demoya v. Walsh, 441 So.2d 1120 (Fla. 3d DCA 1983) (defendant’s characterization of co-worker as “raving maniac” and “raving idiot” during course of heated professional disagreement in presence of small group of other co-workers constituted pure opinion based on disclosed facts). Since there will be no new trial, it is not necessary to address the other issues raised on appeal.
LETTS and WALDEN, JJ., concur.

. Additional facts regarding the patient’s treatment are omitted, as they are superfluous in the context of this opinion.