567 So.2d 510 (1990)
CITY OF CAPE CORAL, Florida, a Municipal Corporation of the State of Florida, Appellant,
v.
WATER SERVICES OF AMERICA, INC., a Wisconsin Corporation, Appellee.
No. 89-03011.
District Court of Appeal of Florida, Second District.
September 21, 1990.
*511 William M. Powell, City Atty., and Marilyn W. Miller, Asst. City Atty., Cape Coral, for appellant.
Arthur J. England, Jr., and Enrique Arroyo of Fine, Jacobson, Schwartz, Nash, Block & England, Miami, for appellee.
CAMPBELL, Judge.
This appeal causes us to revisit yet again the continuing dispute between these parties. In this appeal, appellant, City of Cape Coral (City), challenges the final summary judgment that awarded appellee, Water Services of America, Inc., (WSA), $1,167,946.25 in damages for lost profits, bid preparation costs and prejudgment interest, and reserved jurisdiction to determine the amount of attorney's fees and costs to award WSA. WSA had sued the City on a theory of promissory estoppel claiming it was damaged when the City disqualified WSA's bid on the proposed construction of a reverse osmosis water treatment facility, and awarded the contract to another bidder. As we will explain, we reverse that part of the final summary judgment which represents damages for lost profits and the interest thereon, and we affirm that portion of the judgment which represents bid preparation costs and the interest thereon. We also reverse the judgment awarding WSA attorney's fees in an amount to later determined.
In May 1984, the City issued an invitation to bid on the proposed construction of a reverse osmosis water treatment facility. In the invitation to bid, the City requested bids on two different versions of the proposed facility, a base plant and an alternate plant. The City advertised that it was not necessary for an otherwise qualified bidder to be licensed as a general contractor under chapter 489, Florida Statutes (1983). WSA was prequalified as a bidder and was found to have met the requirements for bidders although it was not licensed under chapter 489. The invitation to bid contained a provision which stated that the contract would be awarded to the evaluated low, responsive and responsible bidder. The invitation to bid also contained a statement in which the City reserved the right to reject any and all bid proposals. Five firms submitted bid proposals in response to the invitation to bid. The City ultimately chose to award a contract for construction of the alternate plant. The bids for the alternate plant relevant to this appeal were the Envirogenics Systems Company's (Envirogenics) bid of $4,338,331.00; WSA's bid of $4,539,451.00; and Hydranautics Water Systems' (Hydranautics) bid of $4,858,000.00. Of these three, only Hydranautics was a contractor licensed under chapter 489. Hydranautics objected that the City should not award the bid to any contractor who was not a Florida state certified general contractor licensed under chapter 489. In a special meeting of the Cape Coral City Council called for the purpose of awarding the contract, the City's attorney advised the City Council that chapter 489 required all bidders to be licensed and state certified prior to submitting a bid on the project. While the City's engineers recommended that the bid be awarded to Envirogenics, *512 based on the advice of its attorney, the City disqualified and eliminated both WSA and Envirogenics as bidders on the facility because they were not licensed under chapter 489. The City Council voted to award the contract to Hydranautics, and the treatment facility was ultimately constructed and completed by Hydranautics. Following the rejection of their bids and the decision to award the contract to Hydranautics, both Envirogenics and WSA filed separate actions seeking a declaratory judgment to declare the award of the contract to Hydranautics null and void and seeking both a temporary and permanent injunction to prohibit the City from proceeding with the Hydranautics contract.
Ultimately, the two actions were consolidated. The request for a temporary injunction was denied, and that denial was affirmed by this court. WSA, in the meantime, had added a second count to its complaint, seeking damages for lost profits, bid preparation costs and attorney's fees. In that count, WSA's alleged as follows:
As a result of the failure of the City to award CONTRACT 3A to WSA and WSA's reliance upon the aforementioned CITY's representations, WSA did not become licensed under Florida Statutes Chapter 489, and has therefore suffered damages in the form of lost profits and the cost of preparation of the bid for CONTRACT 3A, including, but not limited to vendor quotation solicitation and evaluation, contractor selection, negotiation and survey, preliminary design work, bid drawings, bond expenses, and legal expenses.
WSA's theory was that Envirogenics was disqualified as a bidder for reasons other than not being licensed pursuant to chapter 489, and that absent WSA's improper disqualification for not being licensed pursuant to chapter 489, it would have been the low, responsive and responsible bidder. The trial judge severed the licensing issue from the other issues and entered a final declaratory judgment agreeing with the advice of the City's attorney, finding that WSA and Envirogenics were subject to the licensing requirements of chapter 489 and that the City therefore had no liability to WSA or Envirogenics for rejecting their bids. This court affirmed that judgment in Envirogenics Systems Co. v. City of Cape Coral, 510 So.2d 934 (Fla. 2d DCA 1987). The Florida Supreme Court then reversed and quashed this court's decision in Envirogenics Systems Co. v. City of Cape Coral, 529 So.2d 279 (Fla. 1988). On remand, the trial court proceeded with the previously severed count in which WSA sought damages for the City's failure to award the contract to WSA, and the court entered its final summary judgment for $1,167,946.25 in favor of WSA for lost profits, bid preparation costs, prejudgment interest and a determination that WSA was entitled to attorney's fees and costs in an amount to be set at a future date. Envirogenics is no longer a party to the action in the trial court or in this appeal.
Under the circumstances of this case, we conclude that it was proper to award WSA its bid preparation costs and prejudgment interest thereon. WSA was clearly induced to incur the costs to submit its bid on the City's proposed project by the City's representation that the bid would not be rejected because WSA was not licensed pursuant to chapter 489. The City failed to adhere to that representation, and WSA suffered the loss of its bid preparation costs in reliance upon that promise. If WSA had not relied upon the City's promise that WSA need not be licensed under chapter 489 to be a qualified bidder, WSA would have had two alternatives. First, it could have consciously decided to continue not to be licensed under chapter 489, not submit a bid and thereby save the bid preparation costs it incurred in reliance on the City's promise. Second, it could have elected to become licensed, submit its bid and, under the circumstances that subsequently developed, if Envirogenics was otherwise disqualified, possibly be awarded the bid as the low, responsive and responsible bidder. The trial judge was, therefore, correct in awarding WSA its bid preparation costs and prejudgment interest thereon. Royal American Development, Inc. v. City of Jacksonville, 508 So.2d 528 (Fla. 1st DCA 1987); State Mechanical Contractors, Inc. *513 v. Village of Pleasant Hill, 132 Ill. App.3d 1027, 87 Ill.Dec. 532, 477 N.E.2d 509 (4th Dist. 1985); Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084 (6th Cir.1981).
However, we do not find a promise by the City upon which WSA was entitled to rely that would support an action for promissory estoppel to recover lost profits which may have resulted from the City's refusal to award the contract to WSA. We perceive that, although it is not succinctly pled nor argued, WSA relies upon two distinct alleged promises by the City. The first of such promises was that WSA would not be disqualified because it was not licensed under chapter 489. That promise was clearly made, was clearly relied upon by WSA and was broken by the City and, thus, supports the award of WSA's bid preparation costs. The second promise, which would be necessary were we to find a cause of action for lost profits, was the statement in the invitation to bid that the contract would be awarded to the evaluated low, responsive and responsible bidder. The better authority convinces us that such a statement, even if it is considered a promise, is not such as will or should support an action for promissory estoppel for lost profits by a bidder who fails to receive the contract.
Our supreme court discussed at length the elements of promissory estoppel and the circumstances under which that doctrine should be applied in W.R. Grace and Co. v. Geodata Services, 547 So.2d 919 (Fla. 1989). In quoting from the Restatement (Second) of Contracts, § 90 (1979), the supreme court in Geodata emphasized that not every promise is sufficiently binding to support a cause of action based on promissory estoppel. Such a promise should be enforced only when necessary to avoid injustice. Geodata, 547 So.2d at 924. The Geodata court also quoted from its earlier decision in South Investment Corp. v. Norton, 57 So.2d 1, 3 (Fla. 1952), where it had held: "[O]rdinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." Geodata, 547 So.2d at 924.
There is nothing in the record of this proceeding that would indicate any intention by the City, at the time the invitation to bid was made, or thereafter, to award the contract to a bidder other than the calculated low, responsive and responsible bidder. There is clearly no basis to allege or imply wrongful motive or intent as the basis for the City Council's rejection of WSA as a bidder by reason of its failure to be licensed under chapter 489. The City was acting on the explicit advice of its attorney that was later confirmed by the declaratory judgment of the trial court and then by this court only to be later reversed by our supreme court.
As the supreme court said, in discussing the competitive bidding process of public agencies, in City of Pensacola v. Kirby, 47 So.2d 533 (Fla. 1950), a public entity's rejection of bids is subject to some exercise of discretion and the standard by which that discretion is judged is that it should not be arbitrary, unreasonable or capricious, but should be based upon facts reasonably tending to support the conclusions of the public entity. The City's decision to follow the advice of its counsel in rejecting WSA's bid cannot be said to have violated that standard. Even where a public entity makes an erroneous decision over which reasonable persons may disagree, the exercise of its discretion in soliciting and accepting bids should not be interfered with absent a showing of dishonesty, illegality, fraud, oppression or misconduct. Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla. 1982); Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978).
While WSA attempts to distinguish this court's decision in William A. Berbusse, Jr., Inc. v. North Broward Hospital District, 117 So.2d 550 (Fla. 2d DCA 1960), we find those attempts unpersuasive. WSA first argues that Berbusse is a case involving a cause of action for breach of contract and, therefore, is not applicable to this case based upon WSA's theory of promissory estoppel. Even though the plaintiff in Berbusse grounded his complaint on a breach *514 of contract theory, we find that case and this case indistinguishable in theory. Berbusse had alleged that it was the lowest responsible bidder on an invitation to bid which provided that the contract would be awarded to the lowest responsible bidder. Berbusse sought damages for loss of profits and bid preparation costs after the contract was awarded to a higher bidder. Berbusse's theory was that the invitation to bid containing the statement that the contract would be awarded to the lowest responsible bidder was an offer that it would enter into a contract with the lowest bidder. Berbusse argued that its acceptance of that offer by submitting the lowest responsible bid caused a contractual relationship to exist that would support a cause of action for breach of that contract when the award was made to a higher bidder.
We can perceive no distinction except semantics between Berbusse's offer and acceptance contractual theory and WSA's promissory estoppel theory. Regardless of the name of the theory, we hold now, as we did in Berbusse, that a cause of action against a public entity by an unsuccessful bidder for lost profits by reason of its failure to become the successful bidder is not available in Florida, particularly in the absence of arbitrary, capricious, dishonest, illegal, fraudulent or oppressive misconduct. WSA also argues that Berbusse was repudiated by this court in Harry Pepper & Associates, Inc. v. City of Cape Coral, 429 So.2d 97 (Fla. 2d DCA 1983), when we stated in the conclusion of that opinion that "appellants are entitled in their separate action to seek damages in addition to the costs of Pepper's bid preparation." Id. at 99. That statement, whatever may have been its intention, is pure dicta and we adhere to our holding in Berbusse.
Other jurisdictions have held that disappointed bidders on public works contracts cannot recover lost profits resulting from an award of the bid contract to another less responsive bidder. One of the better-reasoned of such decisions from other jurisdictions is State Mechanical Contractors v. Village of Pleasant Hill. We agree with the result and reasoning of the Illinois Appellate Court in that decision.
We likewise reject the reasoning and contrary result reached by cases such as Swinerton & Walberg Co. v. City of Inglewood  Los Angeles County Civic Center Authority, 40 Cal. App.3d 98, 114 Cal. Rptr. 834 (2d Dist. 1974).
Finally, we also find that the trial judge erred in finding that WSA was entitled to an award of attorney's fees and in reserving judgment to set the amount of such an award. We can discern no contractual or statutory basis to support such an award except insofar as some attorney's fees might properly be included in the award of damages for bid preparation costs. While WSA prayed for an award of attorney's fees "under Chapter 57, Florida Statutes," without further specificity, we are unable to find authority for such an award under chapter 57.
We affirm the judgment for damages as to prejudgment interest based on WSA's claim for bid preparation costs. The trial court on remand should enter a judgment which states with specificity those damages and the resulting interest and may take further evidence if necessary to clearly delineate those damages. We reverse the judgment award of damages and prejudgment interest therein in regard to WSA's claim for lost profits. We also reverse the judgment insofar as it awarded WSA a right to attorney's fees and retained jurisdiction to set those fees.
Affirmed in part, reversed in part and remanded with instructions consistent herewith.
DANAHY, A.C.J., and THREADGILL, J., concur.