572 So.2d 519 (1990)
Edward W. JONES, Sr., et al., Appellants,
v.
STERILE PRODUCTS CORPORATION, Etc., Appellee.
No. 89-31.
District Court of Appeal of Florida, Fifth District.
November 8, 1990.
Rehearing Denied January 4, 1991.
Christopher C. Cathcart, Orlando, for appellants.
Michael L. Rosen, Susan L. Turner, and Gregory A. Baldwin, of Holland & Knight, Tallahassee, for appellee.
W. SHARP, Judge.
Edward Jones and Sterile Assembly Systems, Inc. (SAS) appeal from a final summary judgment and permanent injunction in favor of Sterile Products Corporation (SPC). The judgment awarded SPC $533,526.71, including prejudgment interest of $72,247.98, against Jones individually; and $485,156.34, including attorney fees and costs, prejudgment interest ($31,819.91) and punitive damages ($100,000) against Jones and SAS, jointly and severally. We reverse.
This judgment resulted from (essentially) a default situation. SPC sued Jones and SAS. Pleadings were filed raising valid defenses which we will discuss below. Notice was given to Jones and SAS of the summary judgment hearing, but neither appeared. Based on affidavits and depositions only, the final judgment was entered. No further notice or hearing was held to ascertain the damages, which were essentially unliquidated claims for lost profits and price-erosion damages due to appellants' breach of a noncompete contract. This was clearly error. Bogan v. Kreski, 546 So.2d 1132 (Fla. 1st DCA 1989); Gulf Maintenance and Supply, Inc. v. Barnett Bank of Tallahassee, 543 So.2d 813 (Fla. 1st DCA 1989); Himes v. Brown & Co. Securities Corp., 518 So.2d 937 (Fla. 3d DCA 1987); Lauxmont Farms, Inc. v. Zentner, 514 So.2d 82 (Fla. 5th DCA 1987); *520 Bowman v. Kingsland Development, Inc., 432 So.2d 660 (Fla. 5th DCA 1983). Further, because the damages here appear to be unliquidated claims for lost business and profits, rather than breach of a specific contract, prejudgment interest awards are not appropriate. See Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985).
We also find the summary judgment in this case was improperly entered because there were material questions of fact raised by appellant's pleadings and depositions as to whether SPC first breached the royalty and noncompete contract by failing to pay Jones royalties owed under various purchase contracts and a settlement agreement, and whether it or its predecessor (Dart Industries, Inc.) performed its undertaking with Jones and his companies in good faith. There is considerable support in the record for appellants' position that SPC and/or Dart abandoned the sterile gauze products market, and almost completely failed to pay Jones and his companies the royalties promised them.
In addition, the record does not establish as a matter of law that SAS took any business action which could result in the tort of "interference with a business relationship" owed or claimed by SPC. SAS merely engaged in the competitive bidding process for government contracts. SAS and SPC were not the only bidders, and the government did not have to accept the lowest bidder. Such a process on its face does not lend itself to the required elements for the tort of tortious interference with a business relationship. See Heavener Ogier Services, Inc. v. R.W. Florida Region, Inc., 418 So.2d 1074 (Fla. 5th DCA 1982); Adler Consulting Corp. v. Executive Life Ins. Co., 483 So.2d 501 (Fla. 3d DCA 1986).
Under such circumstances we would normally reverse and remand for further proceedings. However, all of appellee's causes of action against Jones and SAS turn on one legal issue: Does SPC have the right to enforce the noncompete covenant against Jones and SAS? We find no basis in the contracts in this record, intricate though they are, which gives SPC any right or standing to enforce the noncompete agreement.
The record shows that Jones was the inventor and developer of a line of medical products (sterile impregnated gauze products). He sold the products through his company, Sterile Products, Inc., and he financed Sterile Products, Inc. through another company, Edward W. Jones Associates, Inc. In 1981, Jones entered into an Option & Royalty contract with Dart Industries, Inc. Dart was given the option to buy Sterile Product's assets. Dart would pay royalties to Associates and Jones and his companies agreed not to engage in or acquire any interest in a business which had any relationship to products similar to sterile impregnated gauze products.
In 1983, Dart exercised the option. It ran Sterile Products as a division under the name Absorbent Cotton Company. In 1984, Jones and his wife moved to Florida, and a dispute arose with Dart concerning its failure to pay royalties to Associates, Jones' company. From 1983 to 1985, only $13,830 in royalties were paid, but $500,000 per year had been promised. Jones was in poor health, and he and Dart entered into a settlement. However, Dart still continued to fail to pay the royalties Jones claimed were due under the settlement.
In 1985, ACCO Acquisition Corporation was formed to purchase Absorbent Cotton Company. This was accomplished with an intricate set of documents containing carefully drafted definitions, which we discuss below. ACCO changed its name to Absorbent Cotton Corporation and in 1986 ultimately was renamed Sterile Products Corporation (SPC). It is the plaintiff below and the appellee here.
In 1986, Jones and his wife began to manufacture sterile gauze products through her company SAS. They had received no royalties and no quarterly statements as had been required under the original agreement with Dart. Dart had junked Sterile Products' plant and machinery and fired all its former employees. In 1987, Dart was no longer competing in the sterile gauze products market.
*521 SPC filed suit against Jones and SAS, seeking to enforce the noncompete provision in Dart's option and royalty contracts and seeking damages for its breach. As stated above, the key question is whether SPC acquired Dart's rights or interests when it bought Absorbent Cotton Company. The documents clearly indicate the option and royalty were excluded from that transaction.
Article III of the purchase contract provides that Absorbent Cotton sold to SPC's predecessor, "the purchased assets and assumed liabilities," which included "assigned agreements." These terms are defined in Article I, so as to specifically exclude any right or liability arising out of the option and royalty agreement between Jones and Dart.
For example, paragraph 1.39 defines "Assigned Agreements" as:
All of the assets of the business ... other than the Excluded Assets ...
(a) All trade accounts, and notes, receivable and other current receivables, but expressly excluding any receivables under the Executory Royalty Agreements

* * * * * *
(e) ... except for the Executory Royalty Agreements, all of Sellers rights in and to all contracts and agreements related to the business to which the Seller is a party on the closing date. .. . (emphasis added)
In addition, section 4.1 of Article I, excludes the buyer from any liability for "Excluded Liabilities" and section 1.22 of Article I defines as one of the excluded liabilities, any liability of Absorbent Cotton arising out of:
(d) The Option and Royalty Contract dated 9/2/81 between Edward W. Jones, Sr., Sterile Products, Inc., and Edward W. Jones Associates, and Dart Industries and Products Purchase Contract and Settlement Contract... .
On the face of the documents it is clear that for whatever reason, the royalty and noncompete agreements were not sold to SPC's predecessor by Dart and its company, Absorbent Cotton, which acquired those rights. Perhaps the documents were amended, or a mistake was made, which possibly could give SPC standing to proceed. But absent such a pleading and proof, judgment should be entered for appellants on all counts.
REVERSED and REMANDED.
COBB, J., and DANIEL, C.W., Judge, Retired, concur.