607 So.2d 423 (1992)
L. Ed HOON, and Hoon & White, Architects, Inc., a Florida corporation, and Fairview Properties, Inc., a Virginia corporation qualified to do business in the State of Florida as Fairview South, Inc., Appellants/Cross Appellees,
v.
PATE CONSTRUCTION COMPANY, INC., a Florida corporation, Appellee/Cross Appellant.
Nos. 90-1254, 90-2284, 91-0035.
District Court of Appeal of Florida, Fourth District.
September 2, 1992.
Motions for Rehearing and Certification Denied October 13, 1992.
*424 Larry Klein of Klein & Walsh, P.A., West Palm Beach and Crary, Buchanan, Bowdish & Bovie, Stuart for appellants/cross appellees.
Leif J. Grazi of Law Offices of Grazi Gianino & Cohen, Stuart, and Marjorie Gadarian Graham, P.A., West Palm Beach, for appellee/cross appellant.
Thomas J. Guilday of Huey Guilday Kuersteiner & Tucker, Tallahassee, Amicus Curiae  Florida Ass'n American Institute of Architects.
PER CURIAM.
This is an appeal and cross appeal from a judgment, and post verdict orders, on claims by appellee, Pate Construction Company, Inc., against appellants, L. Ed Hoon, Hoon & White, Architects, Inc., and Fairview Properties, Inc., arising out of events surrounding Fairview's failure to award a construction contract to Pate after Pate submitted a low bid. We reverse.
Pate sued Fairview, the property owner and the owner's architects, on multiple counts. At trial the court directed a verdict for defendants on quantum meruit and promissory estoppel. The jury found in favor of Pate as to the remaining counts, and awarded various damages: (1) $123,000 compensatory damages for breach of implied contract; (2) $150,000 compensatory damages and $100,000 punitive damages for negligent misrepresentation; (3) $7,000 for defamation; (4) $1,000,000 compensatory damages and $1,150,100 punitive damages for conspiracy to defame; and (5) $100,000 compensatory damages and $550,000 punitive damages for civil conspiracy. Subsequently, the trial court granted a new trial as to damages on the claim for negligent misrepresentation and conspiracy to defame. The trial court also set aside the verdict on negligent misrepresentation as to Hoon and Hoon & White.
The trial court entered a final judgment: (1) against all defendants for $123,000 compensatory damages for breach of implied contract; (2) against all defendants for $7,000 compensatory damages for defamation; (3) against all defendants for $100,000 compensatory damages for civil conspiracy; (4) punitive damages against architect Hoon for $250,000; (5) punitive damages against Fairview South for $250,000; and (6) punitive damages against Hoon and White for $50,000.

FACTS
L. Ed Hoon, an architect with the firm of Hoon and White Architects, Inc., requested Pate, a general contractor, to submit a bid for construction of the "Sun Bank Monetary Triangle" on property owned by Fairview South, Inc., in Stuart, Florida. Pate was one of six prequalified contractors asked to submit a bid.
The written bid instructions supplied to the contractors stated an intent to award the bid to the lowest bidder, as well as a reservation of rights to reject any bid for any reason. The instructions provided:
Owner intends to award construction to the lowest responsible bidder qualified by experience and who possesses adequate plant, equipment, and supervisory *425 personnel to complete the contract, and who is financially secure.
* * * * * *
Owner reserves right to reject any or all bids for whatever reason he may deem necessary for his best interest, and to waive any or all formalities in regard to acceptance or rejection of any bid.
Six contractors submitted bids on the project. Subsequently, bid opening for the contractors was held and it was determined that Pate presented the lowest bid, in the amount of $3,720,913. However, Maddox Construction, the second lowest bidder at $3,850,000, was awarded the construction contract by Fairview South.
The bid form contained in the specifications required a listing of the identities of five major subcontractors and the dollar amount of these subcontracts. Pate's bid form failed to disclose the identities of two of the major subcontractors and failed to list the estimated charges of any of the subcontractors.

THE MAIN APPEAL
The owner and architects assert on appeal that there is no legal or factual basis for any of the claims of Pate. They assert that all of Pate's claims arose out of the Stuart construction project and the failure of the owner to award the construction contract to Pate as the lowest bidder. They claim that the trial court erred in failing to grant either their motion for judgment on the pleadings made at the start of trial or their subsequent motions for directed verdict on all claims. To determine these issues we must examine the legal and factual predicates for each of the claims.

BREACH OF CONTRACT
The count of the complaint entitled "Breach of Contract" stated:
32. The Defendants either directly or through their agent made express warranties to PATE that the low bidder would be entitled to construct THE PROJECT.
33. By pre-certifying PATE as a qualified and solicited bidder on the project, HOON impliedly guaranteed PATE, pursuant to the usage of trade and the course of dealing, that PATE would be the general contractor for construction of THE PROJECT were PATE's bid the lowest received.
34. The defendants breached their oral and written warranties and the terms of their contract with PATE.
The trial court denied defendants' motion for judgment on the pleadings and for directed verdict on breach of contract and submitted the issue to the jury as a claim for breach of an "implied contract". Appellants initially assert that there was no contractual relationship, and hence, no cause of action could arise for breach of contract for the owner's failure to award a private construction contract to the lowest bidder.
In L. Lieby, Florida Construction Law Manual § 5.01 (2d ed. 1988), it is stated:
[T]he general rule in the case of private construction, as distinguished from construction for governmental bodies or agencies, is that the owner or contractor receiving the bid has the freedom to accept or reject it, whether it is high, low, or in between, responsive or non-responsive.
The Restatement (Second) of Contracts § 26(d) (1981), similarly states:

Invitation of bids or other offers. Even though terms are specified in detail, it is common for one party to request the other to make an offer. The words "Make me an offer" would normally indicate that no offer is being made, and other conduct such as the announcement of an auction may have similar effect. See § 28. A request for bids on a construction project is similar, even though the practice may be to accept the lowest bid conforming to specifications and other requirements.
Although citing no Florida cases involving private bidding, appellants rely on similar bidding cases involving government construction projects. In William A. Berbusse, Jr., Inc. v. North Broward Hosp. *426 Dist., 117 So.2d 550, 551 (Fla. 2d DCA 1960), the court held that no cause of action was stated where the defendant did not award the contract to the lowest bidder:
The invitation to bid contains the provision that the award of the contract will be made to the lowest responsible bidder provided it is to the owner's interest to accept the bid. A public body is not required unqualifiedly to award the contract to the low bidder unless there exists a statutory requirement.
Similarly, in City of Cape Coral v. Water Serv. of America, Inc., 567 So.2d 510, 514 (Fla. 2d DCA 1990), rev. denied, 577 So.2d 1330 (Fla. 1991), the second district held:
Regardless of the name of the theory, we hold now, as we did in Berbusse, that a cause of action against a public entity by an unsuccessful bidder for lost profits by reason of its failure to become the successful bidder is not available in Florida, particularly in the absence of arbitrary, capricious, dishonest, illegal, fraudulent or oppressive misconduct.

(Emphasis supplied).
In Jones v. Sterile Prod. Corp., 572 So.2d 519, 520 (Fla. 5th DCA 1990), rev. denied, 583 So.2d 1037 (Fla. 1991), the fifth district stated:
In addition, the record does not establish as a matter of law that SAS took any business action which could result in the tort of "interference with a business relationship" owed or claimed by SPC. SAS merely engaged in the competitive bidding process for government contracts. SAS and SPC were not the only bidders, and the government did not have to accept the lowest bidder. Such a process on its face does not lend itself to the required elements for the tort of tortious interference with a business relationship.
Other states have also held that a bid made pursuant to an invitation to bid does not form a contract. In North Cent. Util., Inc. v. Walker Community Water Sys., Inc., 506 So.2d 1325 (La. App. 1987), the Louisiana court cited the Berbusse case, and held that there could be no recovery even where the invitation to bid did not reserve the right to reject any and all bids. In Olson v. Beacham, 102 N.W.2d 125, 128 (N.D. 1960), a similar conclusion was reached in a factual situation similar to the present case:
In the instant case there was no meeting of the minds of the plaintiff and defendants. The defendants by their advertisement merely invited offers for the construction of certain specified improvements to their place of business. They reserved the right to reject any or all bids. The plaintiff submitted a bid, accompanied by a stipulation that he would enter into a contract if his bid was accepted. It was not accepted, and therefore no contract resulted and the defendants could not, upon the record before us, be held to be obligated to the plaintiff in any manner.
See also O.C. Kinney, Inc. v. Paul Hardeman, Inc., 151 Colo. 571, 379 P.2d 628 (Colo. 1963).
The authorities cited above stand for the proposition that no contract is formed when a bid is made pursuant to an invitation to bid. We agree that this is a sound legal principle consistent with the law of contracts of Florida.
In response, Pate does not take issue with the law set out above, and acknowledges in its brief that in "private construction, an owner may have the right to reject a bid for any reason... ." Pate contends that its claim is really one for breach of an "implied contract" that Pate's bid would receive "fair consideration", and that this issue was submitted to the jury without objection by appellants, and therefore was tried by consent. Appellants point out, however, that they moved for judgment on the pleadings and directed verdict on the breach of contract claim, and were entitled to a proper ruling on those motions by the trial court. They also point out that no motion to amend the pleadings was made and, finally, they assert that the proof does not support a claim for breach of "implied contract."
We agree that the appellants were entitled to a judgment on the pleadings or a directed verdict on the breach of contract claim set out in the pleadings. *427 Further, we have been cited to no circumstances in this case that would invoke the principles of implied contract. Ordinarily, contracts may be implied in order to justify payments for services rendered or goods provided under circumstances where there is no express contract. Aldebot v. Story, 534 So.2d 1216 (Fla. 3d DCA 1988); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla. 1971). We fail to see how this principle applies to the breach of contract claim asserted by Pate here. This is a situation where the rights of the parties are set out in written documents. Ordinarily, an implied contract will not be recognized when there is a writing dealing with the same subject. See, e.g., Matter of Penn Cent. Transp. Co., 831 F.2d 1221, 1229 (3d Cir.1987); Klebe v. United States, 263 U.S. 188, 191, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923). To recognize an implied contract in a situation where the parties agree that the written document provides that the owner may "reject a bid for any reason" would be to emasculate the effect of that provision.
We conclude that the trial court should have granted a judgment on the pleadings or directed a verdict for the defendants on breach of contract.

NEGLIGENT MISREPRESENTATION
To establish a claim for negligent misrepresentation, it must be alleged and proven:
(1) misrepresentation of a material fact;
(2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under the circumstances in which he ought to have known of its falsity; (3) the representor must intend that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.
Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328, 1331-32 (Fla. 2d DCA 1985), rev. denied, 491 So.2d 281 (Fla. 1986), and rev. denied, 508 So.2d 16 (Fla. 1987).
Pate's allegations of negligent misrepresentation stated:
39. The Defendants either directly or through their agent made statements and warranties to PATE which were untrue: specifically, although their statements and warranties were to the contrary, they did not intend to allow the lowest bidder to construct THE PROJECT.
40. The Defendants knew that they were not going to award the construction of THE PROJECT to the lowest bidder or, in the alternative, they were grossly negligent in making the assertion to PATE that the lowest bidder would be awarded the right to construct THE PROJECT.
41. The oral and written misrepresentations which led to PATE's submission of the lowest written bid constituted a material fact to the transaction and related to a matter substantially affecting the interest of PATE.
42. At the time the assurances, statements and warranties were made by the Defendants to PATE, the Defendants had no intention to perform and to award the right to construct THE PROJECT to PATE even were PATE to submit the lowest bid, as PATE ultimately did.
43. PATE had a reasonable right to rely on the statements and assurances made by the Defendants and did rely on those statements and assurances.
44. As a result of the misrepresentations made by the Defendants to PATE, PATE suffered damages which were a natural and probable consequence of their reliance on the Defendants' misrepresentations.
Pate now contends that the negligent misrepresentation consisted of oral assurances by the architect, as well as provisions in the instructions to bidders which asserted the owner's intention to award the contract to the lowest bidder. Pate also asserts that Fairview South negligently failed to advise him that on previous projects it had not always awarded the job to the lowest bidder. In addition, by having a public bid opening, the defendants are alleged to have sent out a false "signal" under the local custom that the low bid *428 would be accepted. In essence, Pate contends that these representations lead him to believe that upon submitting a bid in the lowest dollar amount the owner would be obligated to award Pate the contract, without discretion or consideration of any other factors.
As in the case of fraud, the heart of a claim for negligent representation is a false representation of fact. However, here we have not been cited to any evidence of representations that vary from, or are inconsistent with, the terms of the bid instructions. The claim is based on an invitation to bid, which says the owner intends to award the contract to the lowest responsible bidder, yet reserves the right to reject any or all bids "for whatever reason he may deem necessary for his best interest... ." We fail to see how the cited representations by Hoon and those contained in the invitation to bid expressing an intent to award the contract to the lowest bidder, constitute "misrepresentations" actionable under the law. To hold otherwise would be to ignore the legal authority cited previously as to the effect of issuing invitations to bid.
Pate has also failed to demonstrate any duty on the part of the owner to disclose its past actions or to comply with local custom. We fail to see how these factors, admittedly not set out in the pleadings, would establish a case of negligent misrepresentation. We also note the lack of proof at trial that the owner had actually decided, prior to issuing a request for bids, to award the contract to a particular contractor. This is alleged and realleged throughout Pate's pleadings, but there was no proof of this submitted at trial.
We conclude that the trial court erred in denying defendants' motions for judgment on the pleadings and directed verdict on negligent misrepresentation.

DEFAMATION
The allegations in the complaint alleging defamation were:
61. Based on the statements made by the Defendants, HOON and HOON & WHITE ARCHITECTS, INC., to the owner of the property, the Defendant, FAIRVIEW SOUTH, INC., the Defendants ultimately awarded the contract to construct THE PROJECT to the second lowest bidder.
62. By announcing that the contract had been awarded to a contractor other than PATE, there was a clear and logical inference and innuendo that the refusal to have PATE construct THE PROJECT was due to some deficiency of Pate, [sic] and represented an adverse comment by the Defendants either directly or through their agent on the reputation and abilities of PATE.
63. By refusing to allow PATE to construct THE PROJECT, and by announcing publicly, both orally and in writing, that the contract to construct THE PROJECT had been awarded to another contractor, the Defendants made both an implied non-verbal announcement: that PATE was precluded by virtue of their inability to perform; or that for some other undisclosed reason PATE was incapable of performing, despite PATE's lowest bid; and they also made a written announcement that PATE had in fact not been awarded the contract.
64. The statements which may be implied to the Defendants by virtue of the Defendants' actions constituted non-verbal statements which denigrated PATE's business reputation.
65. By awarding the written contract to another bidder, when considered by the local construction industry aware of the bidding process constituted a direct statement concerning the relationship and status of PATE with an insinuation logically following, that PATE was for some reason unable to perform or incapable of performing.
66. As a direct and proximate result of the Defendants' non-verbal statements concerning PATE in awarding the contract to the second lowest bidder, PATE has suffered significant damages to its business reputation.
67. The damages to PATE's business reputation are a direct and proximate result of the Defendants not having *429 awarded PATE the right to construct THE PROJECT.
These allegations and statements made by Pate's counsel at trial suggest that the defamation took place "by innuendo" when the contractor's low bid was not accepted and this became known in the community. However, we have been cited no authority for the proposition that the "non-verbal" act of rejecting the lowest dollar bid on a construction project, or any similar "non-verbal" act, constitutes legally actionable defamation. Again, such a proposition would be totally at odds with the previously cited law that owners may reject a bid for any reason in private construction projects.
As with the previous issues, Pate relies on appeal on other statements not alleged in the pleadings. For example, it is claimed that Fairview made a statement to Maddox Construction, the contractor awarded the project, that Pate had not filled out the bid form correctly. The pleadings were never amended to include such a statement as defamation. However, it is undisputed that the bid form required the five major subcontractors and the amounts of their bids to be specified, and that Pate omitted the names of two of the subcontractors and the amounts bid by all of the subcontractors. Further, even if people could have reasonable differences of opinion as to whether Pate had properly filled out his bid, opinions cannot be defamatory. See From v. Tallahassee Democrat, Inc., 400 So.2d 52 (Fla. 1st DCA 1981), rev. denied, 412 So.2d 465 (Fla. 1982); Sullivan v. Barrett, 510 So.2d 982 (Fla. 4th DCA 1987). This reasoning would also apply to similar statements made to other officers of Fairview involved in the bid decision process.
A claim similar to Pate's was rejected in Water & Sewer Util. Constr., Inc. v. Mandarin Util., Inc., 440 So.2d 428 (Fla. 1st DCA 1983), in which a public utility company communicated to developers that a water and sewer contractor was not qualified and would never be qualified to perform work in the area controlled by the public utility. The utility was acknowledged to have a qualified privilege with reference to such communications. The court held that "[a] statement is qualifiedly privileged if made by one who has a duty to or interest in the subject matter to another who has a corresponding duty or interest." Id. at 430.
Once a qualified privilege is established, a claimant must establish that the statements were made with actual malice toward the plaintiff. Pate does not dispute the existence of a qualified privilege, but claims that it proved malice on the part of the defendants. We cannot agree. The only proof of malice cited is evidence that the architect and a Fairview official told other Fairview officials in a telephone conference that Pate had been called about the deficiency in the bid form, and Pate still failed to supply the information. Pate admitted that such a call was made and the content of the call. Pate also cites evidence that the call may not have been made until after the conference among the Fairview officials. Even accepting that sequence of events, we fail to see how this established actual malice on the part of Fairview and its architects toward Pate. Fairview had no obligation or duty to call Pate before evaluating the bids. Further, it is undisputed that Pate did not supply the information either in its original bid form or in the follow-up telephone call, whenever it took place. We also question whether a discussion between officials and agents of the same company could constitute the publication element of a defamation in this context. See, e.g., Schreidell v. Shoter, 500 So.2d 228, 232 (Fla. 3d DCA 1986), rev. denied, 511 So.2d 299 (Fla. 1987).
We agree with appellants that the allegations in the complaint did not sufficiently allege a cause of action for defamation, no cause of action for defamation was established at trial, and the motions for judgment on the pleadings or for directed verdict should have been granted.

CONSPIRACY TO DEFAME
The allegations of conspiracy to defame were:

*430 70. Prior to and shortly after the bids were opened, the Defendants conspired to award the contract for the construction of THE PROJECT to a party other than PATE, despite PATE having provided the lowest bid.
71. In furtherance of the conspiracy, these Defendants assumed the position that various subcontractors had not been set forth in PATE's bid with the particularity necessary to award the bid to PATE.
72. The actions of the Defendants were done for the purpose of denying PATE the contractual benefits which they were otherwise entitled to receive: specifically, the award of the contract to construct THE PROJECT.
73. The Defendants wrongfully and maliciously conspired among themselves to award the construction contract to another general contractor other than PATE.
74. In furtherance of the conspiracy alleged above, the Defendants contacted PATE and requested additional information concerning PATE's proposed subcontractors, without informing PATE that if such information was provided PATE would be selected to construct THE PROJECT, without informing PATE that PATE's failure to then provide the information requested would result in PATE's proposal being rejected, and the subsequent award of the contract to construct THE PROJECT to some other general contractor.
75. As a direct and proximate result of the conspiracy between the Defendants and the actions and statements made by the Defendants either directly or through their agent, in furtherance of the conspiracy, PATE has suffered damages.
Since we have determined that a cause of action for defamation, a necessary predicate to a cause of action for conspiracy to defame, has not been alleged or proven, an action for conspiracy to defame predicated on such defamation must also fail. In Robertson v. Industrial Ins. Co., 75 So.2d 198, 200 (Fla. 1954), the supreme court held that since there was a privilege as to the alleged slander, there could be no conspiracy to slander:
The conclusion we have reached disposes of the appellant's contention with reference to the charge of conspiracy to slander, in view of the principle that the gist of such a charge is the slander itself, which, as we have already held, is nonactionable under the facts of the case at bar. Hunter Lyon, Inc., v. Walker, 152 Fla. 61, 11 So.2d 176; Loeb v. Geronemus, Fla., 66 So.2d 241.
It has also been held that there can be no actionable conspiracy between an entity and its officers or agents. In Buckner v. Lower Florida Keys Hosp. Dist., 403 So.2d 1025 (Fla. 3d DCA 1981), rev. denied, 412 So.2d 463 (Fla. 1982), it was held that a hospital could not have conspired with physicians who were on its medical staff, because there can be no conspiracy between an entity and its "officers, agents, and staff." Similarly, in Cedar Hills Properties Corp. v. Eastern Fed. Corp., 575 So.2d 673 (Fla. 1st DCA), rev. denied, 589 So.2d 290 (Fla. 1991), it was held that the leasing agent for a shopping center and the owner of a shopping center could not be held liable for conspiracy.
In the present case, Pate specifically alleged and claimed that the architect was acting at all times as the agent of the owner. At trial, there was no evidence that the architect and his firm were ever acting for personal gain or that they took any action outside the scope of their agency. Under these facts, and, under the case law set out above, conspiracy to defame was not sufficiently alleged or proven.

CIVIL CONSPIRACY
The allegations of civil conspiracy were:
78. In conducting Plaintiff's business, Plaintiff had bid on several different construction projects with the understanding that if Plaintiff's bid was the lowest bid, Plaintiff would be awarded the contract for the construction of THE PROJECT.
79. Plaintiff submitted its bid for the construction of THE PROJECT and did so based upon Plaintiff's belief that Defendants would act in good faith and *431 honor their express promise to award the construction project to the lowest bidder.
80. Defendants offered to contract with the lowest bidder for THE PROJECT and when Plaintiffs submitted the lowest responsible bid, as reflected on Exhibit "C", attached hereto and made a part hereof, Plaintiff accepted the terms of the agreement as proposed by Defendants and thereby formed a contractual relationship with these parties. Notwithstanding said express promise and agreement, Defendants did not award the contract for construction of THE PROJECT to the Plaintiff.
81. Defendants apparently had no intention of awarding the subject construction project to the Plaintiff, even if Plaintiff was the lower bidder because the Defendants had determined to award the construction contract to W.N. Maddox Construction, Inc., such that PLAINTIFF even getting involved in the bid process was a useless exercise and waste of time.
82. Defendants unlawfully and wrongfully did not award the construction contract to the lowest bidder. In fact, when the bids were formally announced at the bid opening, Defendants congratulated the aforesaid Maddox Construction even though that party did not submit the lowest bid.
83. Pursuant to said conspiracy, Defendants totally disregarded and breached their contractual relationship with Plaintiff.
84. Plaintiff would have been able to fully perform the construction contract and would have been able to timely meet the requirements of such contract, however, Plaintiff was not given an opportunity to do so due to the Defendants' "predetermination" of the entire bid procedure.
85. The actions of the Defendants in furtherance of their conspiracy caused loss to the Plaintiff by injuring and damaging its business reputation by preventing PATE from construction THE PROJECT thereby causing lost profits and by preventing Plaintiff from advertising or publicizing that Plaintiff would be constructing the project even though Plaintiff had been the lowest bidder.
In Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla. 1958), the supreme court held that a conspiracy may be established by a showing of a combination of activity which becomes unlawful even though the activity carried out by an individual might not be unlawful. The supreme court reaffirmed Snipes in Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547, 550 (Fla. 1977):
[O]rdinarily there can be no independent tort for conspiracy. However, if the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort. See also Shaltupsky v. Brown Shoe Co., 350 Mo. 831, 168 S.W.2d 1083 (1943); DesLauries v. Shea, 300 Mass. 30, 13 N.E.2d 932 (1938); Cummings v. Harrington, 278 Mass. 527, 180 N.E. 519 (1932).
Pate has made no allegations and has not pointed to any proof to bring it within this legal principle. Fairview could reject Pate's bid with or without the agreement of the architect.
Apparently, based on the allegations in paragraph 81, the conspiracy claim is that the owner and the architects got together in advance and intentionally conspired to award the contract to Maddox Construction, no matter what the other bids contained. The problem with this is that there was no proof of such a conspiracy offered at trial. It appears that a claim of fraud may have been intended to be asserted throughout the pleadings by the repeated allegations that the defendants had agreed in advance to award the contract to Maddox, regardless of the sufficiency or amounts of the other bids. However, there was no separate claim for fraud alleged and, more importantly, no proof of fraud was presented at trial. As the second district has noted, absent a claim and proof of such misconduct, Pate's action is barred in Florida. City of Cape Coral v. Water Serv. of America, Inc., 567 So.2d at 514. *432 We again conclude that the trial court erred in denying appellants' motions.

PROMISSORY ESTOPPEL
We find no error in the trial court's grant of a directed verdict on the claim of promissory estoppel for the same reasons stated herein in the discussion on breach of contract and negligent misrepresentation. Pate relies on City of Cape Coral v. Water Serv. of America, Inc., for the proposition that it can recover its bid preparation costs under a theory of promissory estoppel. However, in that case, unlike here, there was an express representation "that the bid would not be rejected because WSA was not licensed pursuant to chapter 489." 567 So.2d at 512. In City of Cape Coral, the bid by WSA was subsequently rejected for WSA's lack of a license, and the appellate court approved the recovery of bid costs lost by reliance on that representation. No analogous representation is relied upon here, and, of course, the City of Cape Coral court rejected the notion that a claim may be predicated on the failure to award a contract to the low bidder even though the bid instructions expressed an intention to do so. Id.

CONCLUSION
Because we have concluded that the defendants were entitled to a directed verdict on all claims, the other issues raised on appeal or cross appeal are rendered moot.
Accordingly, we reverse and remand with directions for further proceedings consistent herewith.
ANSTEAD, HERSEY JJ., and ALDERMAN, JAMES E., Senior Justice, concur.