606 So.2d 380 (1992)
INTERCONTINENTAL PROPERTIES, INC., Appellant,
v.
STATE of Florida DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, and Coliseum Lanes, Inc., Appellees.
No. 91-873.
District Court of Appeal of Florida, Third District.
September 1, 1992.
Sweetapple, Broeker and Varkas and Robert Sweetapple, Boca Raton, for appellant.
*381 Morton Laitner, Miami, for appellees.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
COPE, Judge.
Intercontinental Properties, Inc. appeals an order by the Florida Department of Health and Rehabilitative Services (HRS) rejecting Intercontinental's bid to lease office space to HRS. We affirm.

I
HRS was in need of 29,600 square feet of office space. It issued an Invitation to Bid for a nine-year lease with options to renew. When the bids were opened, Coliseum Lanes, Inc., was the low bidder and was awarded the contract. The high bidder, Intercontinental Properties, Inc., filed a protest, saying that the low bidder's bid was unresponsive.[1] An administrative hearing officer conducted an evidentiary proceeding and concluded that both bids were unresponsive. The hearing officer recommended that both bids be rejected and HRS did so. The high bidder has appealed.
Shortly after HRS rejected both bids, the low bidder (Coliseum) dropped out and rented its building to other tenants. The practical issue now remaining is whether the Department erred in rejecting the Intercontinental bid.

II
Under the Administrative Procedure Act, this court's role in reviewing administrative action is a limited one. "If the agency's action depends on any fact found by the agency in a proceeding meeting the requirements of s. 120.57, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record." § 120.68(10), Fla. Stat. (1989); see also Koehler v. Florida Real Estate Commission, 390 So.2d 711, 712-13 (Fla. 1980)

III
In this case it is essential to understand what is a "responsive" bid, as opposed to the "lowest and best" bid.
Under the Invitation to Bid, "responsive" refers only to matters of form. A responsive bid means that a bid is submitted on the correct forms, and contains all required information, signatures, and notarizations. (R. 203).
Upon opening, each bid was reviewed for responsiveness. Each responsive (technically complete) bid was then forwarded to a bid evaluation committee in order to obtain a recommendation for which bid should be accepted. (R. 203-04).[2]
Under the Invitation to Bid, the award was to be made to the "Lowest and Best Bid," i.e., the lowest cost and best quality. (R. 198). "`Lowest' refers to least present value cost over term of the lease and options, while `best' refers to results of total evaluation score." (R. 198). The evaluation score was obtained from a numerical scale set forth in the Invitation to Bid. Thus, both cost and quality of the facility were to be rated in deciding which would be the successful bid.
In the present case Coliseum was much better on both criteria. Coliseum's bid was $1,200,000 lower than that of Intercontinental. When rated on the numerical scale, Coliseum received 923 points out of a possible 1,000, while Intercontinental received 653. The evaluative comments about Intercontinental's bid were uniformly negative:
 Not conducive for ES business.
 Not safe for client and staff.
 History of poor maintenance.
 Not recommended as a Service Center.

*382  Owner will charge clients for parking.
 Office space offered on multiple floors.
.....
Major obstacles.
1. At present, there is no provision for space at the ground floor. This is critical since FS issuance will be there. Bidder stated that she could make arrangements with Miami Community College to negotiate for space in the ground floor.
2. Building owner emphatically stated that she would not provide for free parking to our clients. To charge our indigent client population for parking to pick up their checks or receive our services was found to be at least immoral, if not insensitive, by the leasing group. With that in mind, parking for our clients becomes an issue of grave proportions. There is no free parking in the vicinity of this building.
3. The installation of FLORIDA equipment will be severely hampered, if not more expensive, since the HRS sites are not located on adjacent floors.
4. Metro-Dade Code violations. Under separate cover, the code violations of this building have been highlighted. This building must be up-to-code, prior to HRS locating a major service center here.
R. 191-92. HRS personnel testified that Intercontinental was clearly unsuitable for HRS' needs.
By contrast the comments on the low bidder, Coliseum, were all positive and did not have the drawbacks identified for the Intercontinental building. The only negative factor was a need to negotiate regarding priority on move-in since the building was undergoing renovation. (R. 192).
Since Coliseum was the low bidder and also offered the much better facility, HRS awarded the bid to Coliseum. HRS treated both the Coliseum bid and the Intercontinental bid as having passed muster for "technical responsiveness" as defined in the invitation for bids, but found Coliseum to have submitted the "lowest and best bid."

IV
The initial question considered below was whether the bidders had submitted adequate proof of authority to enter into the state lease. The hearing officer heard testimony from the Department of General Services' Property Management Chief, who explained that the State has, in the past, experienced circumstances in which a bid would be submitted by a person purportedly acting on behalf of the owner, when in fact the agent had no authority to submit the bid. Upon acceptance of the low bid, the State was then unable to conclude the transaction because the property owner was not bound by the bid submission.
Consequently, the Invitation to Bid requires bidders to submit documentation reflecting their authority. The Invitation to Bid spelled out the nature of the documentation which was required. As applied to the present case, the Invitation to Bid stated, "If the Bid Submittal is signed by an Agent, written evidence from the owner of record of his/her authority must accompany the proposal." (R. 202) (emphasis in original).
Intercontinental's protest contended that Coliseum's low bid was unresponsive, because it was signed by an agent without attaching proof of the agent's authority to act on behalf of the property owner. Intercontinental affirmatively asserted that its own bid was responsive and it pled that "Intercontinental Properties, Inc. was the lowest and best responsive bidder and was entitled to the award of the bid pursuant to applicable law." (R. 17).
Coliseum intervened, contending that its low bid was responsive and that if the bid was not responsive, any deviation was a minor irregularity which would not eliminate it from consideration for the contract award. Additionally, Coliseum also raised the question whether Intercontinental's bid "contains irregularities which are not minor so as to render [Intercontinental's] bid ineligible for contract award consideration." (R. 26). The matter proceeded to *383 hearing with Coliseum, Intercontinental, and HRS as parties.
The hearing officer found that Coliseum's low bid had been signed by Pamela Stewart, who used the title, "Property Coordinator, Coliseum Lanes, Inc." No documentation was attached to the bid which identified Ms. Stewart as an agent and set forth her authority to act for Coliseum Lanes.
After the bids were opened, HRS requested a letter from Ms. Stewart clarifying her relationship with Coliseum, and Ms. Stewart provided a letter which HRS considered sufficient, even though not signed by an officer of Coliseum. At the evidentiary hearing the president of Coliseum Lanes testified that Ms. Stewart had a long-standing agency relationship with Coliseum and that Ms. Stewart had full authority to act on behalf of Coliseum in submitting the bid to HRS.
The hearing officer ruled that the Coliseum bid was unresponsive. The hearing officer reasoned that since Ms. Stewart was an agent, and the bid had not included the necessary statement regarding her authority to act for Coliseum, the Coliseum bid was in technical noncompliance with the Invitation to Bid and therefore was unresponsive.
The hearing officer also found that Intercontinental's bid was unresponsive. The office building in question is owned by Royal Trust Tower, Ltd., a Florida limited partnership. The bid was submitted by Intercontinental (a property management company), as agent for Royal Trust Tower, Ltd. Intercontinental's bid was signed by Ms. Caroline Weiss in her capacity as President of Intercontinental Properties, Inc.[3]
It is undisputed that Intercontinental was acting in an agency capacity when it submitted the bid on behalf of Royal Trust Tower, Ltd. Ms. Weiss attached the property management agreement to the bid, and relied on that document as proof of her authority to act on behalf of the limited partnership.
The hearing officer found that on its face the property management agreement did not contain sufficient authorization to allow Intercontinental to act as Royal Trust Tower's agent for purposes of entering into this particular lease. There were two specific insufficiencies. First, the hearing officer found that this particular lease was going to require the landlord to perform $450,000 in building modifications at the Royal Trust Tower property. (R. 114). The hearing officer found that "the Management Agreement prohibits Intercontinental Properties, Inc., from incurring expenses in excess of $500 for structural changes and major alterations without the prior written consent of the owner [Royal Trust Tower, Ltd.]... . Weiss did not include, as part of her bid submittal, written authorization from the owner to incur such expenses on behalf of the owner related to this bid submittal, and no evidence was offered that any such prior written consent exists." (R. 114) (emphasis added).
Second, the hearing officer went on to find that the Management Agreement gave Intercontinental authority to execute "only the specific lease form previously approved by the owner. Yet, the [State's] Invitation to Bid requires that the bidder will execute a lease form utilized by the Department, which will also incorporate the bid submittal form. No prior written approval of the owner authorizing Intercontinental Properties, Inc. to execute the Department's required lease or to change the terms of the lease approved by Royal Trust Tower, Ltd., was submitted by Weiss as part of her bid submittal package." (R. 114-15) (emphasis added). The relevant portions of the Management Agreement are set out in the margin.[4]
*384 Thus, although a document was attached to the bid which indicated that Intercontinental had the power to act as the rental agent for Royal Trust Tower, Ltd., the document showed on its face that Intercontinental did not have the authority to bind the owner in two critical respects.
On that basis, the hearing officer found that the Intercontinental bid was unresponsive.[5]

V
Intercontinental argues that the responsiveness of Intercontinental's bid was an unpled issue and that the hearing officer erred by considering it. To the contrary, Intercontinental's protest asserted that "Intercontinental Properties, Inc. was the lowest and best responsive bidder and was entitled to the bid pursuant to applicable law." (R. 17). When Coliseum intervened in the proceedings below, one of the issues it immediately raised was the question of the responsiveness of the Intercontinental bid. (R. 26). Both the hearing officer and the Department took the entirely correct position that Intercontinental "had the burden to prove, one, that the department's decision to award the lease to the Intervenor [Coliseum] was arbitrary or capricious and two, that petitioner's [Intercontinental's] bid was responsive." (R. 137).[6]
At the least, a party protesting an award to the low bidder must be prepared to show not only that the low bid was deficient, but must also show that the protestor's own bid does not suffer from the same deficiency. To rule otherwise is to require the State to spend more money for a higher bid which suffers from the same deficiency as the lower bid.
We conclude that the responsiveness of Intercontinental's bid was properly before the hearing officer and the hearing officer was correct in considering that issue.

VI
Intercontinental next argues that its bid was, in fact, responsive. It urges that Ms. Weiss was a general partner of Royal Trust Tower, Ltd. and therefore had the authority to bind Royal Trust Tower, Ltd. to make the necessary renovations and to *385 sign the State's lease. It contends that she should be deemed to have signed in both capacities, and alternatively that the proof at hearing showed that Ms. Weiss had full authority to act for Royal Trust Tower, Ltd.
First, Royal Trust Tower, Ltd., is the entity which owns the building, while Intercontinental is a property management company, a separate entity with distinct ownership. The bid submittal form was submitted by Intercontinental, with Ms. Weiss signing as President. The documentation attached to the bid indicates that she was acting under the authority of Intercontinental's Management Agreement with Royal Trust Tower, Ltd. (R. 295). It is clear, therefore, that Ms. Weiss proceeded in this matter solely in her capacity as President of the property management company. (R. 288).
It is fundamental that when an individual signs a document in a specifically delineated capacity, the person is signing in that capacity and not in another capacity. While it is true that Ms. Weiss is a general partner of the Royal Trust Tower, Ltd. limited partnership, it is also undisputed that she did not sign the bid submittal form in that capacity.
Intercontinental argues, however, that Ms. Weiss' testimony at the hearing demonstrated that she had all necessary authority to submit the bid. In essence this argument is based on the doctrine of ratification. Ms. Weiss testified that she is a general partner of Royal Trust Tower, Ltd., and that Intercontinental had full authority to submit the bid on behalf of Royal Trust Tower, Ltd. Intercontinental urges that through this testimony, Royal Trust Tower, Ltd. ratified Intercontinental's actions and added the missing statement of authorization to Intercontinental's bid. Intercontinental argues that this testimony cured the deficiency in the Intercontinental bid.
The problem with this approach is that the same logic also qualifies Coliseum Lanes as a responsive bidder. As stated previously, the President of Coliseum testified at the hearing below. (Tr. 184-211). The Coliseum President confirmed that Ms. Stewart had a long-standing agency relationship as property manager for Coliseum. (Tr. 184). He further testified that Coliseum was fully aware of the Coliseum bid and that Ms. Stewart had full authority to submit it. (Tr. 185, 189).
The rules must be consistently applied. If Ms. Weiss is to be allowed to retroactively confirm that Intercontinental had authority to submit the bid on behalf of Royal Trust Tower, Ltd., then by the same standard, the Coliseum President's testimony is equally satisfactory to demonstrate that Ms. Stewart was acting with full authority on behalf of Coliseum.

VII
We next consider the standards to be followed in competitive bidding cases where there is a claim that the low bid was technically unresponsive. The hearing officer erred on this point, but now that Coliseum has dropped out, the error is harmless.
The principles applicable to competitive bidding have been set forth in Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla. 1982). In that case the Invitation to Bid required bidders to bid on Alternate A and Alternate B. The low bidder misunderstood the instructions and only bid on Alternate B. The county commission waived the irregularity and awarded the contract on the basis of Alternate B. Like the present case, Baxter's Asphalt involved a situation in which the successful bid was not complete  because the bidder had not bid at all on Alternate A  and therefore was not a "responsive" bid. The district court of appeal disqualified the low bid on the theory that the county's action in waiving the irregularity was illegal. Id. at 506.
In quashing the decision of the district court of appeal, the supreme court emphasized the public policy considerations pertaining to public contracts:
In Florida ... a public body has wide discretion in soliciting and accepting bids for public improvements and its decision, when based on an honest exercise of this discretion, will not be overturned by *386 a court even if it may appear erroneous and even if reasonable persons may disagree... . Gulf [the low bidder] was put in no position superior to that of Baxter's [the second lowest bidder] or the other high bidders by its failure to submit a bid on Alternate A... .
... .
Baxter's further argues and the district court agreed that the waiving of the bid irregularity was unlawful since Gulf's failure to comply with the specifications was material. We disagree... . [T]he instant case is a situation of a relatively minor irregularity in the technical bidding requirements. Liberty County in the Advertisement for Bids reserved the right to waive irregularities in any bid and we find under the facts of the present case (with trial court findings of no fraud or misconduct on Liberty County's part and with no competitive advantage accruing to Gulf), that there was substantial compliance with the bidding statute.
Id. at 507 (citations omitted; emphasis added); accord Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912, 913-14 (Fla. 1988). See generally The Florida Bar, Florida Administrative Practice, ch. 6-F (3d ed. 1990).
HRS has codified the Baxter's standard by rule:
The Department shall reserve the right to reject any or all bids and proposals. The Department shall reserve the right to waive minor irregularities in an otherwise valid bid or proposal. A minor irregularity is a variation from the bid invitation or proposal terms and conditions which does not affect the price of the bid, or give the bidder an advantage or benefit not enjoyed by other bidders, or does not adversely impact the interests of the Department.

Rule 10-13.012, Fla. Admin. Code (emphasis added). In addition, the Invitation to Bid specifically provided that "The department reserves the right to reject any and all bids when such rejection is in the interest of the State of Florida. Such rejection shall not be arbitrary, but be based on strong justification which shall be communicated to each rejected bidder by certified mail." (R. 207) (emphasis in original); (R. 197).
In the present case the Department had already awarded the contract to Coliseum. It did so in the belief that the Coliseum bid was responsive, that is, technically complete. Once the hearing officer determined that there was a technical deficiency  failure to attach the required statement of authority  the next question was whether the Coliseum bid should be disqualified.
Although the hearing before the hearing officer was a de novo proceeding, that simply means that there was an evidentiary hearing during which each party had a full and fair opportunity to develop an evidentiary record for administrative review purposes. It does not mean, as the hearing officer apparently thought, that the hearing officer sits as a substitute for the Department and makes a determination whether to award the bid de novo. Instead, the hearing officer sits in a review capacity, and must determine whether the bid review criteria set forth in Baxter's Asphalt have been satisfied.
There is a very strong public interest in favor of saving tax dollars in awarding public contracts. There is no public interest, much less a substantial public interest, in disqualifying low bidders for technical deficiencies in form, where the low bidder did not derive any unfair competitive advantage by reason of the technical omission.
In the present case there was no sound reason for the hearing officer to override the judgment of the Department in awarding this contract to Coliseum. The evidentiary record developed before the hearing officer revealed that both bids were submitted with the full authority of the owner. While the failure to attach proof of the agent's authority rendered each of the two bids technically nonconforming, both deficiencies were easily remedied. This is plainly the sort of deficiency which a public *387 agency can, in its discretion, allow a bidder to cure after the fact.[7]
The standards set forth in Baxter's Asphalt are fully applicable to a hearing officer's review of agency decisions in bidding contests. That is so regardless of whether the agency has expressly waived a condition in the Invitation to Bid, as was true in Baxter's Asphalt, or whether, as here, the agency believed that the bid was fully conforming and awarded the contract on that basis. In either event, there is a strong public policy in favor of awarding contracts to the low bidder, and an equally strong public policy against disqualifying the low bidder for technical deficiencies which do not confer an economic advantage on one bidder over another.
If at the present time there were still an active contest between Coliseum and Intercontinental, then the correct result in this case would be to reverse the Department's order on the theory that the original award to Coliseum was correct. However, once the Department disqualified both bids, Coliseum dropped out and has now rented its premises to other tenants. The only remaining contestant is Intercontinental, whose building was rated unsatisfactory and whose rental was $1,200,000 higher than the low bid. Since Intercontinental has failed the objective performance criteria, and since Coliseum has dropped out, the Department's order rejecting both bids now stands as being right for the wrong reason. The order under review is therefore
Affirmed.
NOTES
[1] A third bid was found by HRS to be unresponsive.
[2] Non-responsive bids were to be withdrawn from further consideration.
[3] Ms. Weiss is also a general partner in Royal Trust Tower, Ltd.
[4] The Management Agreement provides, in part:

5  It is further mutually agreed that:
* * * * * *
(c) The owner expressly withholds from the AGENT, any power or authority to make any structural changes in any building or to make any other major alterations or additions in or to any such building or equipment therein or to incur any expense exceeding $500.00, chargeable to the OWNER other than expenses related to the exercising of the expressed powers stated herein, without the prior written consent of the OWNER, except such emergency repairs as may be required because of danger to life or property or which are immediately necessary for the preservation and safety of the premises or the safety of the tenants and occupants thereof, or are required to avoid the suspension of any necessary services to the premises.
* * * * * *
6  The OWNER hereby expressly gives authority to the AGENT to sign and execute leases on behalf of the OWNER for the rental of space to tenants in the subject premises. Said authority, given by the OWNER to the AGENT, is limited to the execution of form leases substantially similar to the form that is attached to this Agreement and which has been previously approved by the OWNER. Said authority is further limited with regard to the minimum amount of rent and with regard to the duration of the lease which said minimum amount of rent and minimum duration of lease are attached hereto and have been previously approved by the OWNER. In addition to the foregoing, the AGENT'S authority to sign leases on behalf of the OWNER, where said leases require the OWNER to expend certain sums to finish the premises for the tenant, is limited to those expenses as attached to this Agreement and have been [sic] previously approved by the OWNER. In the event that a lease is presented to the AGENT for signature on form that is not substantially similar to the form attached to this Agreement, or at a rate per square foot that is less than the minimum specified on the attachments to this Agreement, or for a duration of time that is less than that specified herein or which obligates the OWNER to finish the premises for the tenant at a cost which exceeds that of previously approved [sic] herein, then, in that event, prior written approval of the OWNER is necessary before the AGENT has the authority to execute any such lease.
R. 113-14.
[5] The hearing officer also found that there was doubt about Intercontinental's ability to perform because foreclosure proceedings were pending against the Royal Trust Tower, Ltd. property. (R. 115).
[6] In so ruling, the hearing officer did no more than hold that Intercontinental must prove what it had pled.
[7] In this case the Department did obtain a letter from Ms. Stewart clarifying her status with the project.