874 So.2d 59 (2004)
MIAMI-DADE COUNTY SCHOOL BOARD, Appellant,
v.
J. RUIZ SCHOOL BUS SERVICE, INC. and A. Oliveros Transportation, Inc., Appellees.
No. 3D03-246.
District Court of Appeal of Florida, Third District.
May 19, 2004.
Clyne & Self and Reginald J. Clyne; Shirlyon J. McWhorter and Marcy E. Abitz, for appellant.
Marlow, Connell, Valerius, Abrams, Adler, Newman & Lewis and Jose I. Valdes, for appellees.
Before LEVY, GREEN, and FLETCHER, JJ.
GREEN, J.
The Miami-Dade County School Board ("School Board") appeals from a final judgment awarding lost profits and prejudgment interest to the appellees, J. Ruiz School Bus Services, Inc. ("Ruiz") and A. Oliveros Transportation, Inc. ("Oliveros"), for the School Board's unlawful disqualification *60 of the appellees' competitive bids. We reverse as we conclude that such awards are non-recoverable in this case.
The undisputed facts show that during the summer of 1999, the School Board elicited bids from private bus companies for some of its school routes for the 1999-2000 school year, renewable by agreement for two additional one-year periods. Twenty-one vendors, including appellees, Ruiz and Oliveros, responded to the School Board's invitation to bid. The bids submitted by the appellees were the lowest for two of the routes. However, four bids, including those of the appellees, were rejected by the School Board as non-responsive because they failed to include the required Florida Division of Unemployment Compensation Employer's Quarterly Report Form UCT-6, showing current employees and payroll amount. Thereafter, the School Board awarded the routes to the next lowest bidders who had submitted the prescribed UCT-6 forms.
The appellees timely filed their respective notices of protest, challenging the School Board's actions, with the State of Florida, Division of Administrative Hearings. Rather than abating or suspending the award process pending the outcome of the protest proceedings,[1] the School Board entered into contracts with the second lowest bidders for the two bus routes.
Following a hearing, the administrative law judge ("ALJ") found that, although the appellees failed to submit the required UCT-6 forms, the majority of the other bidders had submitted UCT-6 forms that were incomplete, in conflict with other submitted forms, incorrectly filled out, and/or out of date. The ALJ further found that the appellees' failure to submit the UCT-6 forms was a minor irregularity, not a material deviation from the bid specifications, because it did not affect the price of the bids, give the appellees a competitive advantage over other bidders, or give the School Board any reason to doubt the appellees' ability to fulfill their contracts. Moreover, the ALJ found that by accepting deficient UCT-6 forms from other bidders, the School Board had waived deviations regarding these forms from the bid requirements, and thus the School Board's failure to award contracts to the appellees, as the lowest bidders, was clearly erroneous, contrary to competition, arbitrary and capricious.
Based upon these findings, the ALJ found that the appellees were entitled to the award of the two routes for which they were the low bidders. The ALJ noted, however, that since the School Board had already awarded the contracts in question, and since a final order in this proceeding would not be entered until two months before the expiration of the 1999-2000 school year, the relief the appellees sought was unavailable. The appellees, alternatively, requested that they be awarded damages in the amount of their bids, but the ALJ concluded that this relief would be more appropriately sought in the circuit court. The ALJ awarded the appellees the two bus routes for the remaining twenty days of the 1999-2000 school year.
Appellees then filed the complaint below, against the School Board, seeking damages for lost income and profits for the period of time in which they were wrongly denied the bus route contracts. The School Board filed a motion to dismiss on grounds that an unsuccessful bidder to a public contract had no cause of action against a public entity for the recovery of loss profits. It cited City of Cape Coral v. Water Services of America, Inc., 567 So.2d 510, 514 (Fla. 2d DCA 1990); and William *61 A. Berbusse, Jr., Inc. v. North Broward Hospital District, 117 So.2d 550, 552 (Fla. 2d DCA 1960) in support of its motion. The trial court denied the motion, finding that appellees' complaint stated a cause of action for lost profits because the School Board's actions were found to be "arbitrary and capricious," unlike the cases relied upon by the School Board.
The parties stipulated that Ruiz had sustained $17,117.81 and Oliveros $15,384.00 in lost profits for the 160 days that they had been denied the bus routes.[2] The trial court entered its final judgment pursuant to the stipulation and awarded the appellees lost profits and prejudgment interest. This appeal followed.
Florida's competitive bid statutes were enacted for the benefit and protection of the public in that they are intended to ensure that the public receives the lowest and best price for goods and services and that public contracts are not awarded in an arbitrary and capricious manner. See City of Sweetwater v. Solo Constr. Corp., 823 So.2d 798, 801 (Fla. 3d DCA 2002). Accordingly, public contracts must be awarded to effectuate this intent. Id. The bid statutes create reciprocal benefits and responsibilities for the bidder and the public authority:
Florida's competitive bid statutes ... create a system by which goods or services required by public authorities may be acquired at the lowest possible cost. The system confers upon both the contractor and the public authority reciprocal benefits, and confers upon them reciprocal obligations. The bidder is assured fair consideration of his offer, and is guaranteed the contract if his is the lowest and best bid received. The principal benefit to the public authority is the opportunity of purchasing the goods and services required of it at the best price obtainable. Under this system, the public authority may not arbitrarily or capriciously discriminate between bidders, or make the bid based upon personal preference.
Id. (citing Marriott Corp. v. Metro. Dade County, 383 So.2d 662, 665 (Fla. 3d DCA 1980) (quoting Hotel China & Glassware Co. v. Bd. of Pub. Instruction, 130 So.2d 78, 81 (Fla. 1st DCA 1961))).
Here, the School Board did not challenge the finding that it acted arbitrarily and capriciously when it failed to award the contracts to the appellees as the lowest bidders. That said, the question becomes whether the appellees are nevertheless entitled to a recoupment of their lost profits for the time period in which they were wrongfully denied the contracts if equitable relief may no longer be available.[3] The Administrative Procedure Act (the "Act"), under which the appellees' bid protests were heard, grants a reviewing court the authority to order such ancillary relief as it finds necessary to redress the effects of wrongfully taken or withheld official action. See § 120.68(6)(a) 2., Fla. Stat. (1999). Neither the Act nor Florida case law, however, has ever countenanced an award of lost profits to an unsuccessful bidder. See Hoon v. Pate Constr. Co., Inc., 607 So.2d 423, 432 (Fla. 4th DCA 1992); City of Cape Coral, 567 So.2d at 514; Berbusse, 117 So.2d at 552.
The trial court based its lost profits award on dicta found in the City of Cape Coral case. There, the Second District, *62 affirmed a previous holding that lost profits were not recoverable against a public entity. City of Cape Coral, 567 So.2d at 514. The court added that this was particularly true "in the absence of arbitrary, capricious, dishonest, illegal, fraudulent or oppressive misconduct." Id. (emphasis added). It is this added dicta which the appellees have seized upon as support for their claims of lost profits. We conclude, however, that this dicta was not meant to imply that lost profits are a proper measure of damages where there has been a finding of arbitrary, capricious, dishonest, illegal, fraudulent, or oppressive misconduct by the public entity.[4]
To date, no other Florida court has expressly addressed the issue of whether lost profits are recoverable by a bidder who was wrongfully denied a public contract. A survey of decisions from other states, however, shows that the overwhelming weight of authority is against allowing an award of lost profits to unsuccessful bidders of public contracts. See, e.g., Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth., 23 Cal.4th 305, 96 Cal.Rptr.2d 747, 1 P.3d 63, 70 (2000).[5] The courts reason that competitive bidding statutes were enacted for the benefit of taxpayers and that the general public does not benefit from allowing a disappointed bidder to recover lost profits. Id. These courts hold that permitting the recovery of lost profits "unduly punishes the tax-paying public" and provides an unfair windfall to unsuccessful bidders for work they did not perform and risks they did not incur. Id. See also Lawrence Brunoli, Inc. v. Town of Branford, 247 Conn. 407, 722 A.2d 271, 275 (1999) ("[A]n unsuccessful bidder does not have standing to seek money damages. To conclude otherwise would run counter to the sound and established purpose of protecting the public interest that underlies the municipal bidding statutes."); Court St. Steak House, Inc. v. County of Tazewell, 163 Ill.2d 159, 205 Ill.Dec. 490, 643 N.E.2d 781, 786 (1994) (quoting Beaver Glass & Mirror Co. v. Bd. of Ed. Of Rockford School Dist., 59 Ill. *63 App.3d 880, 17 Ill.Dec. 378, 376 N.E.2d 377, 380 (1978)) ("If the statute were held to create such a remedy [i.e., lost profits], then taxpayers, whom the statute was designed to protect, would be injured twice whenever the school board failed to award a contract to the lowest responsible bidder: the first time, through the unjustified additional expenditure of funds on the awarded contract, and then, a second time through the necessity for paying a judgment for lost profits to the aggrieved low bidder."); Marbucco Corp. v. City of Manchester, 137 N.H. 629, 632 A.2d 522, 525 (1993) (stating that recovery of lost profits whenever contract is wrongfully denied could drain public fisc in response to mere carelessness on part of low level government officials); Stride Contracting Corp. v. Bd. of Contract & Supply, 181 A.D.2d 876, 581 N.Y.S.2d 446, 448 (N.Y.App.Div.1992) (finding no cause of action for lost profits, only standing to require contract be awarded to lowest responsible bidder); Conway Corp. v. Constr. Eng'rs, Inc., 300 Ark. 225, 782 S.W.2d 36, 41 (1989) (holding unsuccessful bidder could not recover lost profits); Sutter Bros. Constr. Co. v. City of Leavenworth, 238 Kan. 85, 708 P.2d 190, 195-96 (1985) (finding no cause of action for lost profits where bidder commenced action long after contract awarded to second lowest bidder and work completed); Tel. Assocs. v. St. Louis County Bd., 364 N.W.2d 378, 383 (Minn.1985) (holding unsuccessful bidder could not recover lost profits); M.A. Stephen Constr. Co. v. Borough of Rumson, 125 N.J.Super. 67, 308 A.2d 380, 385 (App.Div.1973) (holding lowest responsible bidder not entitled to damages even if bids rejected in violation of statute); Aqua-Tech, Inc. v. Como Lake Prot. & Rehab. Dist., 71 Wis.2d 541, 239 N.W.2d 25, 29 (1976) (stating statutory bid laws are intended to benefit public, not bidder); City of Scottsdale v. Deem, 27 Ariz.App. 480, 556 P.2d 328, 330 (1976) (same).[6]
Although finding that lost profits are not recoverable, most jurisdictions permit, either by statute[7] or case law,[8] the recovery *64 of bid preparation and/or bid protest costs where an injunction or other equitable relief is no longer available. See Kajima, 96 Cal.Rptr.2d 747, 1 P.3d at 68, 71-72.
*65 We find the reasoning of the majority of jurisdictions around the country against the award of lost profits to unsuccessful bidders to be sound and reverse the award of lost profits to the appellees. We do, however, remand for a factual determination of whether the School Board may rectify the losses caused by its wrongful denial of appellees' bids by simply awarding the appellees comparable or similar school bus routes in a future school year. The trial court, however, will have to make this determination based upon competent evidence. If the trial court finds this remedy to be unavailable, then we conclude that appellees' recovery shall be limited to their bid preparation and/or protest costs. See City of Cape Coral, 567 So.2d at 512.
Because we find the award of lost profits to be improper, we need not address the propriety of the award of prejudgment interest. However, we do note in passing that the prejudgment interest on an unliquidated damage award in this case is inappropriate as well. See Argonaut Ins. Co. v. May Plumb. Co., 474 So.2d 212 (Fla. 1985).
For the above reasons, we reverse the award of lost profits and remand with directions that appellees be awarded equitable relief in the form of future comparable contracts, if possible, or, in the alternative, that their damages be limited to their bid preparation and/or bid protest costs.
Reversed and remanded with instructions.
NOTES
[1] See § 120.57(3)(c), Fla. Stat. (1999).
[2] The parties agreed, however, that the School Board did not waive its challenge to the appellees' entitlement to such damages.
[3] It was not entirely clear from the record or the responses given at oral argument why the School Board cannot simply redress this problem by providing the appellees with comparable routes at some point in the future.
[4] Indeed, in its subsequent decision of Overstreet Paving Co. v. State Department of Transportation, 608 So.2d 851 (Fla. 2d DCA 1992), the Second District itself seemingly ignored the City of Cape Coral decision. In Overstreet, the Second District reversed a final administrative order from the Department of Transportation ("DOT") dismissing the bid protest of the lowest bidder to a road project whose bid had been declared non-responsive due to a technical omission. Overstreet, 608 So.2d at 852. Because DOT, like the School Board in this case, had already awarded the subject bid contract to another, the court concluded that the unsuccessful bidder no longer had a meaningful remedy in an administrative forum. Id. at 853. The court then remanded the case for "ancillary relief" pursuant to section 120.68(13)(a) 2., Florida Statutes (1991) (which is substantively identical to section 120.68(6)(a) 2.(1999)), in an appropriate circuit court, but emphasized that it expressed no opinion concerning the remedy or damages available to an unsuccessful bidder in such action. Id. at 853-54.
[5] Although a few courts have indicated in dicta that lost profits are recoverable when bad faith is established, only two cases have actually upheld such an award of lost profits to an unsuccessful bidder. See Kajima, 96 Cal.Rptr.2d 747, 1 P.3d at 72 (citing City of Durant v. Laws Constr. Co., 721 So.2d 598, 604-07 (Miss.1998) (affirming lost profits award); Bradford & Bigelow, Inc. v. Commonwealth, 24 Mass.App.Ct. 349, 509 N.E.2d 30, 35, 37 (1987) (same); see Marbucco Corp. v. City of Manchester, 137 N.H. 629, 632 A.2d 522, 524-25 (1993) (limiting damages on remand to bid preparation costs under promissory estoppel theory; lost profits available if public agency's conduct tantamount to bad faith); Peabody Constr. Co. v. City of Boston, 28 Mass.App.Ct. 100, 546 N.E.2d 898, 902 (1989) (stating that bidder may recover lost profits if allegations of bad faith proved at trial)).
[6] Legal scholars tend to agree as well with the majority of jurisdictions on this issue. See, e.g., James L. Isham, Annotation, Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency For Nonaward of Contract, 65 A.L.R.4th 93, 99 (1988) ("[W]hile equitable, extraordinary, or declarative relief may serve the public interest by preventing the award and execution of a contract for an excessive amount, permitting damages in such cases serves the bidder's interest alone, and is contrary to the public interest the competitive bidding laws were designed to protect, further burdening a treasury already injured by paying too high a price for the goods or services.") (footnote omitted); 10 McQuillin, Municipal Corporations (3d rev. ed.1999) § 29.86, at 550, quoted in Kajima, 96 Cal.Rptr.2d 747, 1 P.3d at 70 ("The misfeasance of public officials in failing to award the contract to the lowest bidder should not be compounded by not only requiring unjustified additional expenditure of public funds on the awarded contract, but also allowing recovery for lost profits to the aggrieved low bidder.") (footnote omitted).
[7] See Kajima, 96 Cal.Rptr.2d 747, 1 P.3d at 71 n. 5, which cites:

Alaska: Alaska Stat. § 36.30.585, subd. (c) ["if a protest is sustained in whole or part, the protester's damages are limited to reasonable bid or proposal preparation costs"]; Arkansas: Ark.Code Ann. § 19-11-244, subd. (g) ["protesting bidder or offeror may be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs, through the commission"]; Colorado: Colo.Rev.Stat. § 24-109-104 ["protester shall be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs"]; Hawaii: Hawaii Rev. Stat. § 103D-701, subd. (g) ["In addition to any other relief, when a protest is sustained and the protestor should have been awarded the contract under the solicitation but is not, then the protestor shall be entitled to the actual costs reasonably incurred in connection with the solicitation, including bid or proposal preparation costs but not attorney's fees."]; Louisiana: La.Rev.Stat. Ann. art. 39, § 1671, subd. G ["In addition to any other relief, when the protest is ... sustained and the protesting bidder or offeror should have been awarded the contract but is not, the protesting bidder or offeror shall be entitled to the reasonable costs incurred in connection with the solicitation, including bid preparation costs other than attorney's fees...."]; Maryland: Md.Code Ann., State Fin. Proc. § 15-221.1, subd. (a) ["The Board of Contract Appeals may award a prospective bidder or offeror, a bidder, or an offeror the reasonable costs of filing and pursuing a protest, not including attorney's fees...."]; Minnesota: Minn.Stat. § 471.345, subd. 14 ["In any action brought challenging the validity of a municipal contract under this section, the court shall not award, as any part of its judgment, damages, or attorney's fees, but may award an unsuccessful bidder the costs of preparing an unsuccessful bid."]; South Carolina: S.C.Code Ann. § 11-35-4310, subd. (4) [bidder or offeror who should have been awarded contract but is not, may be "awarded a reasonable reimbursement amount, including reimbursement of its reasonable bid preparation costs"]; Utah: Utah Code Ann. § 63-56-47, subd. (1) ["When a protest is sustained ... and the protesting bidder or offeror should have been awarded the contract under the solicitation but is not, the protestor, in addition to any other relief, shall be entitled ... to the reasonable costs incurred in connection with the solicitation, including bid preparation and appeal costs"]; the District of Columbia: D.C.Code Ann. § 1-1189.8, subd. (f)(2) ["The Board may, when requested, award reasonable bid or proposal preparation costs and costs of pursuing the protest, not including legal fees, if it finds that the District government's actions toward the protester or claimant were arbitrary or capricious."].
[8] See Kajima, 96 Cal.Rptr.2d 747, 1 P.3d at 71 n. 6, citing:

Heyer Products Co. v. United States (1956) 135 Ct.Cl. 63, 140 F.Supp. 409, 412-413 [despite alleged egregious government misconduct, unsuccessful bidder cannot recover lost profits because there was no contract, but may recover bid preparation expenses based on government's implied promise to give bid fair and impartial consideration]; Keco Industries, Inc. v. United States (1970) 192 Ct.Cl. 773, 428 F.2d 1233, 1237, 1240 [extending Heyer to cases in which plaintiff adduces prima facie evidence of arbitrary and capricious government conduct]; Planning and Design Solutions v. City of Santa Fe (1994) 118 N.M. 707, 885 P.2d 628, 636 [relying on implied contract theory to allow recovery of bid preparation costs]; City of Atlanta v. J.A. Jones Construction Co., 398 S.E.2d at pp. 370-371 [low bidder whose bid is unfairly rejected entitled to reasonable bid preparation costs, but not lost profits]; Telephone Associates, Inc. v. St. Louis County Bd. (Minn.1985) 364 N.W.2d 378, 383 [allowing recovery of bid preparation costs, and expenses, including reasonable attorney fees, but not lost profits]; State Mechanical Contractors, Inc. v. Village of Pleasant Hill (1985) 132 Ill.App.3d 1027, 87 Ill.Dec. 532, 477 N.E.2d 509, 512-513 [aggrieved bidder not entitled to lost profits]; City of Scottsdale v. Deem (1976) 27 Ariz.App. 480, 556 P.2d 328, 330 [contractor not entitled to lost profits when unjustifiably denied a contract award]; Owen of Georgia, Inc. v. Shelby County (6th Cir.1981) 648 F.2d 1084, 1094, 1096 [under Tennessee law, disappointed bidder may recover under promissory estoppel theory bid preparation and protest costs, but not lost profits]; see also Court Street Steak House, Inc. v. County of Tazewell (1994) 163 Ill.2d 159, 205 Ill. Dec. 490, 643 N.E.2d 781, 786 [agreeing in dicta with "overwhelming weight of authority" against allowing recovery of lost profits]; Neilsen and Co. v. Cassia and Twin Falls County Joint Class A School District 151 (Ct.App.1982) 103 Idaho 317, 647 P.2d 773, 775 [bid preparation costs, but not lost profits, recoverable for breach of implied contract to consider each bid in accordance with all applicable statutes; recovery based on law of the case].