NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LEE MEMORIAL HEALTH SYSTEM,   )
   )
         Appellant,   )
   )
v.   )     Case No. 2D14-5925
   )
PROGRESSIVE SELECT INSURANCE   )
COMPANY,   )
   )
         Appellee.   )
_____)

Opinion filed October 25, 2017.

Appeal from the Circuit Court for Lee
County; Keith R. Kyle, Judge.

Hala Sandridge of Buchanan Ingersoll &
Rooney, P.C., Tampa, for Appellant.

Valerie A. Dondero of Kubicki Draper,
P.A., Miami, for Appellee.

PER CURIAM.

        Lee Memorial Health System (LMHS) appeals from a final summary

judgment in favor of Progressive Select Insurance Company (Progressive), in which the

trial court held that chapter 2000-439, section 18, Laws of Florida, improperly permitted

the creation of a lien based on a private contract in violation of article III, section

11(a)(9), of the Florida Constitution.  We affirm.

This case arises from an automobile accident in which Ruben Gallegos was struck by a car and was injured. LMHS provided hospital services related to Mr. Gallegos' injuries during two periods: October 22, 2006, through October 29, 2006, and January 11, 2007, through January 23, 2007. On November 1, 2006, LMHS recorded a hospital claim of lien pertaining to Mr. Gallegos' first stay in the amount of $55,167.49. On January 31, 2007, LMHS recorded a lien in the amount of $29,032.50 pertaining to his second stay, for a total of $84,199.99.

Mr. Gallegos, through counsel, filed a claim against the driver of the car that hit him and the car's owner. The driver and the owner were insured by two different insurance companies, Progressive and MGA Insurance Company (MGA). On December 1, 2006, Progressive offered to pay the limits of its insured's bodily injury coverage "as full and final settlement of your client's claim under a non-admission of liability based upon a copy of the Lee Memorial lien you provided and absent a demand from your firm."[1] On January 9, 2007, Mr. Gallegos' counsel informed LMHS of the availability of bodily injury coverage from the two insurers and asked the hospital to write off the balance of the amount due (at the time, $55,167.49). LMHS responded with a handwritten, signed note indicating that "LMH cannot write off Mr. Gallegos' entire bill. Counter offer of $6,666.66 is made by Patty O'Brien (Mgr.)." The record does not reflect whether Mr. Gallegos' counsel responded to this offer. Mr. Gallegos subsequently signed and delivered a release to Progressive, and on June 27, 2007, Progressive tendered a check for $10,000 to Mr. Gallegos' counsel. Progressive also

---

[1]The record indicates that MGA tendered its insured's bodily injury limit of $10,000 directly to LMHS as full and final settlement of LMHS's claim for damages.

tendered an additional $4000 as payment for Mr. Gallegos' property damage claim. According to our record, on September 10, 2009, Progressive tendered another $10,000 directly to LMHS from the Personal Injury Protection (PIP) benefits of its insured's policy.

On October 6, 2011, LMHS filed a lawsuit against Progressive and MGA, alleging that both insurers impaired the two liens LMHS had recorded against Mr. Gallegos. The complaint alleged that the entire amount of the two liens, $84,199.99, remained unpaid. MGA was subsequently dismissed from the suit by joint stipulation. On December 13, 2012, Progressive filed a motion for summary judgment in which it argued, in part, (1) that chapter 2000-439, section 18, "is unconstitutional as a special law pertaining to the creation, enforcement, extension and/or impairment of liens based on private contracts in violation of Article III, §11(a)(9), of the Florida Constitution" and (2) that chapter 2000-439 "is an unconstitutional impairment of the insurance contract between Progressive and its insured . . . under Article I, §10 of the Florida Constitution." Following a hearing, the trial court granted Progressive's motion for summary final judgment, holding that chapter 2000-439 was "unconstitutional as a special law which improperly creates a lien based on a private contract" and that therefore, the lien imposed by LMHS on the proceeds received by Mr. Gallegos from Progressive was invalid.

**DISCUSSION**

Chapter 2000-439, Laws of Florida (a "codified act," see § 189.429, Fla.

Stat (2006)[2] (often referred to as a "special law" or "special act")) created the Lee

Memorial Health System as "a public health care system in Lee County." The special

law sets forth the duties and powers of the Lee Memorial Health System, provides for its

operation and maintenance, and provides for the execution and enforcement of liens. In

this case, we are only concerned with the provisions pertaining to the execution and

enforcement of liens, which are found in section 18 of the special law. That provision

provides, in pertinent part:

> Lee Memorial Health System shall be entitled to a lien for all reasonable charges for hospital, physician, and other health care services provided by the Lee Memorial Health System to ill or injured persons, upon the proceeds of all causes of action, suits, claims, counterclaims, and demands accruing to said persons or to their legal representatives, and upon all judgments, settlements, and settlement agreements rendered or entered into by virtue thereof, on account of injuries giving rise to such causes of action, suits, claims, counterclaims, demands, judgments, settlements, or settlement agreements, which injuries shall have necessitated such hospital, physician, and other services provided to such ill or injured persons.
> . . .
>
> (3)    No release or satisfaction of any cause of action, suit, claim, counterclaim, demand, judgment, settlement, or settlement agreement shall be valid or effectual as against the lien of Lee Memorial Health System unless the lienholder shall join therein or execute a release of its lien prior to the payment of any proceeds thereof. Any acceptance of a release or satisfaction of any cause of action, suit, claim, counterclaim, demand, judgment, settlement, or settlement agreement in the absence of a release or satisfaction of the lien of Lee Memorial Health System shall prima facie constitute an impairment of such lien and the lienholder shall

---

[2]Subsequently renumbered as section 189.019. See ch. 2014-22, § 49 at 608-09, Laws of Fla.

be entitled to a cause of action for damages against any and all persons, firms, or corporations giving or accepting such release or satisfaction, or paying or accepting the proceeds from the same.  In such action, Lee Memorial Health System may recover the full amount of its charges for such hospital, physician, or other health care services; regardless of the amount of proceeds paid or received in impairment of its lien.  . . .

(4)     No person shall be entitled to recover or receive damages based on the expense of hospital, physician, or other health care services provided by Lee Memorial Health System unless that person shall affirmatively show that Lee Memorial Health System's charges have been paid.  Provided, however, that [the plaintiff may include his or her hospital expenses as an item of damages if Lee Memorial is notified of the pendency of an action or claim]. . . .  Any judgment rendered in favor of the plaintiff or counterclaimant shall provide that the amount proved by the lienholder to be due shall be deducted from the damages awarded and paid to the Lee Memorial Health System.

Ch. 2000-439, §18, at 372-73, Laws of Fla. (emphasis added.)

## A.     Chapter 2000-439, Section 18, violates article II, section 11(a)(9), of the Florida Constitution.

As noted above, the trial court found section 18 of chapter 2000-439 to be unconstitutional because it is a special law which allowed for the imposition of a lien based on a private contract.  Specifically, the court determined that the special law ran afoul of article III, section 11(a)(9), of the Florida Constitution, which provides, "There shall be no special law or general law of local application pertaining to . . .  creation, enforcement, extension or impairment of liens based on private contracts, or fixing of interest rates on private contracts."  Stated another way, a special law or general law of local application violates article III, section 11(a)(9), if it attempts to create, enforce, extend, or impair a lien, where that lien is _based on_ a private contract.

- 5 -

The contract at issue in this case is the admissions contract that Mr. Gallegos signed upon being admitted to Lee Memorial Hospital that stated, in pertinent part:

> PAYMENT OF BENEFITS . . .
>
> 1. I <u>certify</u> that the information given by me in applying for payment by the insurance company or Medicare or other governmental or private plan is correct.
>
> 2. [Release of medical information to secure payment.]
>
> 3. [Assignment of benefits from insurance or Medicare to doctors providing services.]
>
> **CONTRACT TO PAY**: [Understanding of liability for all balances due at discharge.]
> . . . .
>
> . . . If a lawsuit is filed to collect a bill, the undersigned agrees to pay reasonable attorney's fees, costs and expenses incurred by Lee Memorial Health System in pursuing such action.

Subsequently, LMHS filed two liens (pertaining to two different periods of inpatient care) stating the following:

> HOSPITAL CLAIM OF LIEN
>
> Pursuant to Chapter 00-439, Laws of Florida, Special Acts, 2000, [name of director], being duly sworn, deposes and says:
>
> 1. That [ ] he/she is <u>Director, Central Business Office</u> of Lee Memorial Health System, 2776 Cleveland Ave, Fort Myers, Florida.
>
> 2. That Lee Memorial Health System rendered hospital care, treatment, and maintenance to <u>RUBEN GALLEGOS</u> . . . from the time of his/her admission . . . to the time of his/her discharge . . . the Amount Claimed such services and presently remaining unpaid is $55,167.49, for which the Lee Memorial Health System hereby claims a lien *<u>by virtue of its authority under Chapter 00-439, Laws of Florida, Special Acts, 2000</u>*.

- 6 -

(Third emphasis added.)  Thus, the lien at issue was created pursuant to a special law and was "based on" the admissions contract between LMHS and Mr. Gallegos.

On appeal, LMHS argues, as it did below, that article II, section 11(a)(9), of the Florida Constitution only prohibits special laws that create, enforce, extend, or impair liens based on _private_ contracts.  But, it argues, chapter 2000-439 created a public hospital, which means that the contract between itself and Mr. Gallegos was a public contract.  Therefore, according to LMHS, the trial court erred in declaring the special act unconstitutional because article III, section 11(a)(9), does not prohibit the imposition of a lien based on a public contract.

We cannot agree that the contract for the provision of medical care between Mr. Gallegos and the hospital is a public contract.  The necessary premise of LMHS's argument is that the nature of a contract derives entirely from the nature of one of the contracting parties, that is, because LMHS is a public hospital, all contracts to which it is a party are public contracts.  LMHS fails to cite any authority for this proposition.  The reason it is unable to do so is because there is none.  There is no case, statute, U.S. Code section, Federal Acquisition Regulations chapter, or state administrative code section that defines "public contract" the way LMHS would like.  In fact, the concept of a "public contract" seems to exist solely within the framework of government procurement and almost always has to do with procurement of materials, supplies, and services.  See, e.g., Public Contracts, 41 U.S.C. §§ 3101-4712 (2011) (establishing federal procurement policy and contracting procedure); Miami-Dade Cty. Sch. Bd. v. J. Ruiz Sch. Bus Serv., Inc., 874 So. 2d 59, 61 (Fla. 3d DCA 2004) ("Florida's competitive bid statutes were enacted for the benefit and protection of the

public . . . to ensure that the public receives the lowest and best price for goods and services and that public contracts are not awarded in an arbitrary and capricious manner."); Intercontinental Props., Inc. v. Dep't of Health & Rehab. Servs., 606 So. 2d 380, 385-86 (Fla. 3d DCA 1992) (discussing public policy considerations pertaining to public contracts); Satellite Television Eng'g, Inc. v. Dep't of Gen. Servs., 522 So. 2d 440 (Fla. 1st DCA 1988) (discussing the competitive bidding process for public contracts). In short, to the extent that the term "public contract" has been defined, that definition appears to be a contract between a government entity and a private party to perform a task (such as construction) or for the provision of equipment, goods, or services that is financed by public funds.

While there is no Florida caselaw directly on point to the question presented here, in Mercury Insurance Co. of Florida v. Shands Teaching Hospital & Clinics, Inc., 21 So. 3d 38 (Fla. 1st DCA 2009) (Shands I), the First District touched on the issue:

> The Florida Hospital Association, writing as *amicus curiae,* argues that Shands' hospital lien is not based on a private contract, but stems from a public pact with the hospital, which is required by federal law to provide emergency service. We find that the lien does not attach to the public's assets, but rather to the assets of the patient whose contract with the hospital is a private one, and therefore reject the argument of *amicus.*

Id. at 39. The supreme court agreed with the First District's analysis: "Here, the First District correctly held that the Lien Law 'is a special law which creates a lien based on a private contract between Shands and its patient,' and is thus unconstitutional under article III, section 11(a)(9), of the Florida Constitution." Shands Teaching Hosp. & Clinics, Inc., v. Mercury Ins. Co. of Fla., 97 So. 3d 204, 210 (Fla. 2012) (Shands II).

LMHS correctly points out that Shands was a private hospital, whereas LMHS is a public one. LMHS also points out that the phrase in Shands I, "whose contract with the hospital is a private one," appears to be structurally independent and incidental to the language preceding it and therefore it does not perfectly refute its argument that the contract in this case is a public one. We agree that the quoted language leaves some room for interpretation. However, we agree with the trial court that the more reasonable interpretation is that the nature of the contract flowed from the fact that the assets at issue were not public assets but were those of the patient. We can conceive of no other reason why our sister court would have gone out of its way to discuss the distinction between public and private assets if that distinction was not relevant to its conclusion that the admissions contract was a private one.

We conclude that the admissions contract between a hospital, whether public or private, and its patient is a private contract. Accordingly, section 18 of chapter 2000-439 is unconstitutional because it allows for a lien based on a private contract in violation of article III, section 11(a)(9), of the Florida Constitution.

**B.      Chapter 2000-439, Section 18, violates article I, section 10 of the Florida Constitution.**

In its motion for summary judgment, Progressive also argued that Chapter 2000-439 "is an unconstitutional impairment of the insurance contract between Progressive and its insured . . . under article I, §10 of the Florida Constitution." Although it did not cite article I, section 10, in its order, the trial court observed that

> [a] close reading of Chapter 2000-439 indicates that LEE
> MEMORIAL HEALTH SYSTEM is entitled to a lien on the
> proceeds of any cause of action, suit, claim or demand and
> upon any judgment, settlement or settlement agreement
> entered into by virtue thereof and on account of the injuries

- 9 -

> that give rise to such causes of action. . . . In the instant case, Chapter 2000-439 purports to attach a lien to the private causes of action and assets of the patient.

Article I, section 10, states, "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be passed." But chapter 2000-439 allows LMHS to sue an insurer who was not a party to the admissions contract simply because the insurer did what insurers frequently do: enter into settlement contracts with their insureds or with persons injured by the actions of their insureds. In doing so, the special law unconstitutionally impaired the insurer's contractual rights in violation of article I, section 10, of the Florida Constitution. See Citrus Cty. Hosp. Bd. v. Citrus Mem'l Health Found., Inc., 150 So. 3d 1102, 1108 (Fla. 2014) (holding that a special law violated article 1, section 10, because it had the effect of "rewrit[ing] . . . the parties' contractual agreements" (approving Citrus Mem'l Health Found., Inc. v. Citrus Cty. Hosp. Bd., 108 So. 3d 675 (Fla. 1st DCA 2013)); Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1080 (Fla. 1978) ("It is axiomatic that subsequent legislation which diminishes the value of a contract is repugnant to our Constitution."); Cohn v. Grand Condo. Ass'n, Inc., 26 So. 3d 8, 10-11 (Fla. 3d DCA 2009) (concluding that a statute was unconstitutional because it impaired the obligation of contract as applied to the plaintiff), aff'd, 62 So. 3d 1120, 1122 (Fla. 2011).

In addition, the special law permits LMHS to sue the insurer for "the full amount of its charges . . . regardless of the amount of proceeds paid or received," ch. 2000-439, § 18(3), at 373, thereby exposing the insurer to potential losses far greater than that for which it contracted. It is well established that, absent bad faith (and where no dispute exists as to the available coverage or policy limits), an insurer's liability is

limited to the amount of its policy limits.  See Nationwide Mut. Fire Ins. Co. v. Voigt, 971 So. 2d 239, 241-42 (Fla. 2d DCA 2008); State Farm Mut. Auto. Ins. Co. v. St. Godard, 936 So. 2d 5, 9 (Fla. 4th DCA 2006) ("[I]n the absence of a judicial finding of bad faith, in an action against an insurer for damages under a policy of insurance, a final judgment against the insurer cannot exceed the stated policy limits.").  Thus, the special law not only infringes upon the insurer's right to contract but creates conditions exposing the insurer to liability far in excess of the limits of coverage for which it contracted.

## CONCLUSION

In summary, section 18 of chapter 2000-439 authorizes the imposition of a lien based on a private contract in violation of article III, section 11(a)(9), of the Florida Constitution.  Further, it impairs the obligations of contracts entered into by an insurer and its insured or a claimant under the insured's contract of insurance, in violation of article I, section 10, of the Florida Constitution.  Accordingly, we affirm the trial court's declaration that section 18 of chapter 2000-439 is facially unconstitutional and affirm the final summary judgment in favor of Progressive Select Insurance Company.

Affirmed.


SILBERMAN and SLEET, JJ., and DAKAN, STEPHEN L., ASSOCIATE SENIOR JUDGE, Concur.

- 11 -